**GUNTER et al. v. ALEXANDRIA COCA COLA BOTTLING CO., Limited.**

**No. 6143.**

Court of Appeal of Louisiana. Second Circuit.

June 10, 1940.

Cleveland Dear and K. Hundley, both of Alexandria, for appellants.

Polk & Robinson, of Alexandria, for appellee.

TALIAFERRO, Judge.

Plaintiffs, John Gunter and wife, for their individual accounts and jointly for the use and benefit of their minor daughter, George Ann, aged seven (7), sue to recover amounts in damages allegedly accruing as a result of the wife and daughter taking into their mouths and stomachs particles of glass from a bottle of Coca Cola manufactured and sold by defendant.

It is alleged that the bottle of Coca Cola was purchased by petitioners from Hascile O'Neal, a merchant in the town of Pineville, Louisiana, who had purchased same from defendant; that the cap thereon was removed by an employee of O'Neal and immediately thereafter Mrs. Gunter and the daughter each drank a small quantity therefrom and instantly: "* * * noticed and felt large quantities of fine glass in their throats, mouths and on their lips, which said glass came from the inside of the said bottle of 'Coca Cola'; that in drinking it a quantity of fine particles of glass undoubtedly entered their stomachs as well as their mouths, which was dangerous to the knowledge of petitioners and caused them to become greatly excited and worried."

That on becoming aware that the bottle contained particles of glass, Mrs. Gunter expelled from her mouth the liquid taken therefrom and caused her daughter to do likewise; that they called for help and wiped the glass from their lips and mouths and then hastily sought the advice and services of physicians; that their mouths were cut by the glass and bled profusely, accompanied by considerable pain; that a few days later Mrs. Gunter's throat became inflamed and swollen, for which she was treated by physicians; that the daughter suffered considerable pain for several days. following the drinking of the glass.

It is further alleged that Mrs. Gunter suffered severe pain for several weeks from the glass getting into her mouth and was in bed therefrom for two weeks and ran temperature for five weeks; that for several months thereafter she was fearful that some of the glass had lodged in her throat or had entered her stomach and that death or serious injury would result.

Defendant admits that it manufactures in large quantities for wholesale, the soft drink known and called "Coca Cola" and that in the month of June, 1939, it sold several cases thereof to said O'Neal, a retail

merchant; but beyond this, all the material allegations of fact of the petition are denied. Defendant, at considerable length, describes the scientific manner and method employed by it in preparing and bottling its Coca Cola for the market, which is done almost entirely by up-to-date machinery especially designed for the purpose, with very little assistance from human hands. The method thus employed, it is alleged, and so appears to us, eliminates, as far as humanly possible, all danger of the liquid becoming contaminated or affected by foreign matter or deleterious substances, including shivers of glass.

Defendant affirmatively alleges that if Mrs. Gunter and her daughter drank any deleterious substance and/or glass from said bottle, which is specifically denied, that such matter or substance got into or was placed in the bottle at the time when or subsequent to its being opened. In the alternative, defendant pleads the contributory negligence of Mrs. Gunter and her daughter in bar of recovery by them, and, as a basis therefor, avers that the bottle was improperly opened at plaintiff's request by a child of immature years, who was neither the agent nor employee of defendant; that as a result of such opening of the bottle by said child, the mouth thereof was chipped and if any glass was found therein or drunk therefrom, such improper opening accounts therefor. Plaintiffs' demands were rejected and they appealed.

In the afternoon of June 10, 1939, Mr. and Mrs. Gunter, accompanied by their son, Dave, aged eighteen (18), their young daughters, George Ann and Grace Lett, and their baby, drove by automobile to Mr. O'Neal's store to purchase groceries for the weekend. All remained in the car save Dave and George Ann. He was directed to purchase the groceries. Before doing so, he procured a bottle of Coca Cola from the ice box and after the cap was removed, sent it out to the car by George Ann. It was drunk by Grace Lett and the baby. Nothing untoward occurred in connection therewith. George Ann returned to the store and Dave procured another bottle of Coca Cola from which the cap was removed, and George Ann carried it to her mother. Mrs. Gunter testified that, as was her custom, she sloshed some of the liquid from the bottle and wiped its mouth and neck with her apron, then drank some of the contents and handed the bottle to George Ann, then standing on the ground,

who also drank some of it; that George Ann then passed the bottle back to her and that she took a mouthful therefrom and again handed it to George Ann. She further testified:

"* * * By the time I drunk that I discovered I had glass in my mouth and I caught my throat, like that, and made a motion to Mr. Gunter, already sitting under the wheel, made a motion to look to the little girl. All my mouth and throat was full of it. I spit a mouthful of blood and glass out on the fender.

"By that time he had gotten around to the girl and it was all around her mouth and on the little girl's mouth I saw blood. That scared us to death. Mr. O'Neal went in and seen where the Coca Cola was opened by the Coca Cola opener. There was no glass to be discovered. Of course, there was a little nick off the side of the bottle."

* * * * * *

"It was all over my mouth; all sticking inside my mouth. I taken my apron tail and wiped in there and brought out glass at the same time. Several pieces was sticking in my gums and side of my mouth and tongue. It was bleeding. We picked it out after I got back to the house."

Mrs. Gunter also testified that there was a complete circle of glass slivers around George Ann's mouth after she drank the second swallow, but, in contradiction of her pleadings and earlier testimony on the subject, also says that none of the glass was swallowed by the child. This circle of glass, she testified, was wiped away by Mr. Gunter. He, in direct contradiction of not only some allegations of the petition, to which he and his wife made oath, but also of her testimony, says that George Ann did not suffer to any extent from drinking the glass and that her mouth and lips did not bleed at all. George Ann did not testify. Therefore, so far as concerns the demand on her behalf, it ceases to be an issue in the case. She experienced no injury whatever.

Coincident with the discovery of the glass in the bottle, Dave Gunter came out of the store with some groceries. He says he saw the glass around his sister's mouth like "quicksliver", and also saw his mother "grab her throat * * * and hold her head over the side of the car and her mouth was bleeding, and when she spit, she spit out a mouthful of blood." He then poured out some of the liquid from the

bottle on the porch of the store "to find out if it was glass." (This test was made notwithstanding, according to his testimony, he already knew his mother had drunk some glass and that his sister's lips were encircled with such.) He also says that there was fine glass in the liquid poured out and "some two or three big pieces come out on the porch." There were also some particles of glass left in the bottle. Mrs. Gunter says she spat up about one-fourth of a teaspoonful of fine glass.

Mr. Gunter, with slight variances, corroborates the testimony of his wife and son, Dave, as regards the presence of glass in the bottle, his wife drinking some of it and that which circled George Ann's mouth. The testimony of one or two other witnesses, not free of interest, in some respects corroborates that given by the Gunters.

Mr. O'Neal testified that he kept his Coca Cola in a small ice box in his store, on the side of which was affixed a metal opener; that a large per cent of his customers take the bottles from the box and, by use of the opener, remove the caps therefrom themselves; that he did not know Dave Gunter had gotten the two bottles from the box until informed that Mrs. Gunter had cut her lip on a bottle or with glass. He afterwards learned that a small boy then in his store, not employed by him, when Dave made known his desire to buy the Coca Cola, took them from the box and removed the caps. Mr. O'Neal furnished water for Mrs. Gunter and the daughter to rinse their mouths. He noticed that Mrs. Gunter had a very slight cut on one lip from which a small "amount of blood was coming." He detected at the bottom of the bottle one piece of glass "pretty noticeable" and a few slivers. He was unable to discover any particles of glass on the floor below the opener nor did he see any other foreign substance in the bottle.

The family did not hurry to see a doctor as alleged. Dave says that they first called to see Dr. Murrell and finding him out, they went to Dr. Wallace's office. Mr. and Mrs. Gunter testified that they first went to see Dr. Wallace and do not mention going to Dr. Murrell's office at all. Strange such difference on a fact which should have equally impressed them all. Dr. Wallace was very busy and after waiting awhile, Mrs. Gunter and the other members of the family left for their home without seeing him. This action indicates quite forcibly that Mrs. Gunter's condition then was not considered by her and her husband to be as serious as they now would have us believe.

Nothing further was done about procuring medical attention until the following Monday, June 12th. On this date Mrs. Gunter again went to Dr. Wallace's office. She says he administered a local anaesthetic and "went in my throat"; that he tried to find glass in her mouth and throat but failed, and repeated the effort on the following day with the same result. She says she went to see Dr. Wallace the third time when her throat was "all swollen up." He was not then available and she went to Dr. Wilson's office, which adjoins that of Dr. Wallace. She testified that Dr. Wilson gave her treatments on the 15th and 17th of June, consisting of swabbing her throat and the giving of some tablets.

Dr. Wallace was introduced by plaintiffs as a witness. He flatly contradicted Mrs. Gunter's testimony in material respects. He says she came to see him for examination and treatment on June 12th and 13th, stating that she had recently drunk some fluid containing glass. Examination of her mouth and throat revealed no lacerations or other injuries whatever. He did notice a little "crack" on her lower lip, not within the mouth proper, which might have been caused from injury. Her throat was not then swollen though she complained of pain in it.

Dr. Wilson was summoned by plaintiffs and was present in court during the trial, but not used. A strong presumption arises from this fact that he was not availed of because the testimony he would give, as is true of Dr. Wallace's, would have been unfavorable to plaintiffs' cause.

It is shown, as is generally known, that it is not uncommon in removing caps from Coca Cola bottles, that particles of glass chip off. These particles may or may not fall into the bottle, dependent upon circumstances. In the present case, the bottle's neck was chipped. The fresh, active condition of the liquid proves that the cap theretofore excluded air from the interior of the bottle, which would not likely have been done if the bottle's mouth had been previously injured. The piece or pieces of glass could not be found on the floor under the opener. Pieces were seen in the bottle when examined by Mr. O'Neal

and others, fairly well corresponding in size and appearance to the nick in the bottle's neck.

■ It is absurd to assert that a circle of glass slivers, even if in the bottle, could have formed around the daughter's lips from the pressure of the bottle's mouth thereto. Generally, a child puts the entire mouth of a bottle in its own mouth when drinking; but, if this was not done, surely the glass would not have risen to the upper side of the neck and affixed itself to the child's upper lip. This would have been necessary to complete the circle.

We are certain plaintiffs' testimony as regards the glass on this child's lips is largely, if not wholly, untrue. It is probably true that when Mrs. Gunter discovered her lip was cut and felt, or thought she felt, particles of glass in her mouth, she suggested to her husband that he wipe the daughter's lips out of an abundance of caution.

There are many unreasonable phases to plaintiffs' contentions. Their testimony in several material respects absolutely contradicts their pleadings. In several respects their testimony is shown to be wholly untrue. From the beginning, plaintiffs' actions indicate a purpose of laying the predicate for a law suit. They consulted five (5) physicians, procured prescriptions from two, none of which was used and only availed themselves of the testimony of one of the five, and his evidence did violence to Mrs. Gunter's case.

Plaintiffs have woefully exaggerated the quantity of broken glass found in the bottle. That which was therein came from the breaking caused by removing the cap. This was done by the young boy at Dave's request, for whose actions defendant is in no wise responsible. The slight cut on Mrs. Gunter's lip was made by the jagged edge of the bottle's mouth.

The primary issue of liability in this case pivots upon a question of fact. The trial judge, rich in experience as such, resolved the factual question against plaintiffs. We could give no sound reason for upsetting that conclusion. Appellee's counsel, in brief, state that the trial judge in passing on the case orally, declared that he found plaintiffs unworthy of belief. Appellants' counsel aver that the trial judge based his rejection of the demands upon the failure to prove injury. We prefer to rest a decision squarely upon plaintiffs' failure to establish by a preponderance of the testi-

mony that the glass found in the bottle was therein prior to being opened. In reaching this conclusion, we are influenced by three outstanding points, viz:

1. The very careful manner employed by defendant in preparing and bottling Coca Cola for the market, which makes it highly improbable that glass would be left therein.

2. It is proven to our satisfaction that the bottle's neck was chipped when opened and that the slivers fell into the bottle.

3. The contradictions in testimony offered by plaintiffs, the material variances between their pleadings and their testimony and instances where it is clearly shown that their testimony is untrue all materially affect the probative weight of the testimony given by them.

■ Appellants invoke the res ipsa loquitur doctrine. It has been held to have proper application in a case of this character. The proof adduced by plaintiffs did not make out a prima facie case for them, therefore, no comfort is afforded them because of the relevancy of the doctrine to cases of this kind.

The judgment appealed from is correct. It is affirmed, with costs.