Plaintiff, for himself and as natural tutor of his two minor children, seeks damages for the death of his wife, the mother of the children, alleged to have resulted from a fall sustained by reason of the defective condition of certain premises rented from the defendant, Cahn Investment Company, of which the defendant, General Accident Fire Life Assurance Corporation, Limited, is the liability insurer.
The case was tried on the merits and there was judgment in favor of defendant rejecting plaintiff's demands, from which judgment plaintiff prosecutes this appeal.
Plaintiff, with his wife and children, lived on the premises at 1028 1/2 Allen Avenue in the City of Shreveport, Caddo Parish, Louisiana, which they rented from the defendant, Cahn Investment Company, the owner thereof. A small toilet located on the rented premises and connected with the back porch of the house occupied by plaintiff's family was used by the occupants of the Pinkney house and those of the house next door. The floor of this toilet was constructed of 2x6 board planks laid lengthwise at a height of about 28 inches from the ground. Sometime during the month of June, 1946, the exact date being unknown, plaintiff's wife, Rosie Lee Pinkney, who weighed about 260 pounds and at the time was some four or five months pregnant, went into the toilet, and, while walking across the floor thereof, sustained a fall, by reason of the breaking of one of the planks, causing her right leg to pass through the hole thus created, which fall allegedly caused serious injuries to the right leg, thigh, hip, side, arm and abdomen.
Petitioner alleges that, by reason of the injuries sustained, his wife suffered severe shock, pain and suffering, accompanied by threats of miscarriage, and that she was given medical attention by Dr. Lacey, a negro doctor, and Dr. E.W. Harris of Shreveport; that a child was born prematurely at the Charity Hospital in Shreveport *Page 346 
on August 4, 1946, which child died some hours after birth. Petitioner further alleges that as a result of the accident described and the injuries resulting therefrom, his wife was hospitalized from time to time in the Charity Hospital and that after re-entering the hospital the last time on September 28, 1946, she died early on the morning of September 30, 1946, all as the result of the accident described and the injuries sustained therefrom.
Petitioner further alleges the latent defect of the flooring of the toilet and the negligence of the defendant landlord.
The record discloses the fact that, prior to the death of Rosie Lee Pinkney, a compromise settlement was effected by and between the defendant landlord, Cahn Investment Company, and Rosie Lee Pinkney and her husband, Lemo Calvin Pinkney, the plaintiff herein. It is conceded that this settlement adjusted all rights and claims that existed prior to the death of Rosie Lee Pinkney, and, accordingly, the damages claimed in this suit are confined to such as resulted by reason of the death of the said Rosie Lee Pinkney.
There is no dispute with reference to the fact that decedent suffered a fall and sustained some injuries as a result. The only issue tendered to this Court, and the one upon which a determination of the appeal must rest, is whether plaintiff has proved, to the extent and degree required by law, that the death of decedent was caused by the accident described.
[1] Without question the burden is upon this plaintiff to establish by a fair preponderance of the evidence that the accidental injury was the cause of death.
In discharging this burden of proof it is axiomatic that plaintiff is required to make out his case with reasonable certainty.
The records of the Shreveport Charity Hospital were introduced in evidence upon trial of the case. These records show that decedent was first admitted to the hospital on August 4, 1946, in the seventh month of pregnancy, and on that date a child was born prematurely. The infant died on the same date some hours after delivery, and on August 8, 1946, the patient was discharged in good condition.
The decedent was next admitted to the hospital on August 18, 1946, and discharged on August 28, 1946; was again admitted on September 6, 1946 and discharged September 17, 1946; was admitted for the last time on September 28, 1946, and died at 1:55 a.m. on September 30, 1946. An autopsy was performed by Dr. W.B. Allen and a microscopic examination and pathological diagnosis was made by Dr. W.R. Matthews.
There is no question as to the fact that the decedent's death was due to acute ulcerative or bacterial endocarditis.
The only medical witness presented on behalf of plaintiff was the negro doctor, behalf of plaintiff was the negro doctor, Lacey, who testified that he had treated the decedent the day before she was first taken to the hospital, and that, though he made no diagnosis, he thought from the patient's symptoms that she was suffering from malaria. This witness did not recall having seen the decedent at any later date. In answer to a hypothetical question propounded by counsel for plaintiff the witness testified that in his opinion the infection which produced the endocarditis could have been caused by injuries sustained by a fall of the nature suffered by the decedent. But it is worthy to note that the witness voluntarily stated that his opinion would be governed by the findings of the pathologist.
No attempt was made by plaintiff to present Dr. Harris, who he alleges had treated the decedent, as a witness on trial of the case.
The expert testimony on behalf of defendants was given by Dr. E.E. Dillworth, an obstetrician, Dr. J.H. Eddy, Jr., a physician and surgeon, and Dr. W.R. Matthews, a pathologist. These witnesses had made a study of the entire case history of the decedent from the Charity Hospital records, and all three testified in effect that they found no relationship between the fall sustained by the decedent in June and either the miscarriage, which followed some six or eight weeks later, or her subsequent death, which occurred some three or four months after the accident.
[2] While the testimony of each of these medical witnesses is entitled to great weight, we find the testimony of Dr. Matthews *Page 347 
particularly convincing. This witness is one of the most distinguished pathologists of the country, recognized as a outstanding authority in this highly specialized branch of medical science. A thorough study of Dr. Matthews' very detailed testimony as to his positive conclusions and the basis of facts upon which these conclusions were predicated, to our minds, is conclusive. The witness testified positively that in his opinion neither the premature birth nor the death of the decedent were connected in any way with the fall which she had sustained in June, 1946.
The greater part of the arguments of counsel for plaintiff, as presented orally and in brief before this Court, was devoted to the attempt to break down the conclusions reached by defendant's medical witnesses. We are not only of the opinion that distinguished counsel failed in this attempt but we point out that the record does not serve to establish those essential requirements in the way of proof which would justify a finding that the death of decedent resulted directly or indirectly from the injuries sustained by the fall which is made the basis of this action.
It was argued that the acute endocarditis could have been caused by a bacterial infection which entered the decedent's body by way of the right thigh or leg which was the location of the direct injuries sustained in the fall. But we call attention to the fact that plaintiff completely failed to show injuries of such a character. It is true one witness testified that the decedent told her that she "scraped" her right leg, but there was no proof to substantiate this bit of hearsay testimony, nor is there anything in the record which indicates that the decedent sustained any laceration or breaking of the skin of such a nature as would justify the conclusion of an entering infection.
We think the testimony of defendant's medical witnesses positively and unequivocally eliminates from consideration every reasonable hypothesis which might support plaintiff's contention in this respect.
In the final analysis there is no question but that plaintiff has failed to prove with anything approaching a reasonable certainty or by preponderating evidence the essential requirement of a chain of causation leading from the accident to the death. It must be remembered that the burden is upon plaintiff to prove the relationship between the accident and death and not upon the defendant to disprove the same. However, in this case we feel doubly assured of the correctness of the judgment inasmuch as we find that plaintiff has failed to assume and satisfactorily discharge the burden of proof resting upon him, and, further, that defendant has affirmatively proved the lack of any causal relationship between the accident and the death.
[3] As has been many times declared by the several courts of this State, probabilities, surmises, speculations and conjectures cannot be accepted as sufficient grounds to justify recovery on the part of a plaintiff who is charged with the burden of proof.
For the reasons assigned the judgment appealed from is affirmed at appellant's cost.
KENNON, J., absent.