Plaintiff sues to recover damages allegedly sustained by him as the result of consuming part of the contaminated contents of a bottle of Coca Cola manufactured and sold by the Natchitoches Coca Cola Bottling Company, a commercial co-partnership. The company and its component members are impleaded as defendants. We quote the allegations of his petition that describe the pain, suffering, etc., he claims to have experienced from drinking the Coca Cola, viz.:
"That approximately thirty to forty-five minutes after drinking this Coca Cola, as aforesaid, your petitioner became deathly sick and nauseated, suffered cramps in his stomach and abdominal region; that he became very weak and experienced sinking feelings and emotions; that he became extremely nervous.
"That his stomach and back began to hurt him about an hour after the drinking of this contaminated drink, and that he suffered great and intense pain in his stomach and back, all as a direct result of the drinking of this beverage.
"That the day following, your petitioner began to suffer great and intense pain in his lower back region and in region of his kidneys.
"That since on or about the day following the drinking of this beverage, your petitioner has been and is still at this time under the care and treatment of a physician for the physical ailments and disorders brought about by reason of and as a direct result of the drinking of this contaminated beverage, all as aforesaid.
"That by reason of and as a direct result of the physical ailments brought about by the drinking of the said contaminated beverage, your petitioner has been unable to sleep regular hours that he has lost a great amount of sleep because of his physical sufferings; that your petitioner has lost about ten pounds in weight, all by reason of physical ailments occasioned by the partaking of the beverage, aforesaid."
Defendants, prior to answering, prayed for oyer of the Coca Cola bottle from which plaintiff drank and of the unconsumed part of the liquid therein. Answering the prayer for oyer, plaintiff says:
"* * * That the plaintiff, just as he so alleged, took the remaining contents of the said drink to the Natchitoches Parish Health Office for an analysis, and that since that time the plaintiff has never seen *Page 349 
the contents of the said bottle, nor does he know the whereabouts of said bottle or the contents thereof. That the said plaintiff does not expect to use said contents on the trial of this case."
Defendants articulately deny the allegations of the petition and further aver that the company has been engaged in the bottling, sale and distribution of soft drinks, especially Coca Cola, in the City of Natchitoches, Louisiana, for fifteen years; that it employs in such business modern and up-to-date machinery and equipment which are kept in proper state of repair; that the ingredients used in said drinks are of first grade quality, and in every respect it observes and follows approved formulas in the preparation of said drinks in the endeavor to protect them from contamination and to insure them against exposure to unsanitary conditions, etc.; that if the bottle involved herein contained any substance besides the liquid itself, when plaintiff drank therefrom, such substance found its way into the bottle after it left defendants' possession.
The lower court awarded plaintiff judgment for One Hundred Fifty ($150) Dollars. Defendants appealed. Plaintiff did not appeal nor has he answered the appeal perfected by defendants. In brief, however, his counsel complains of the inadequacy of the award and argues for substantial increase thereof.
[1] An appellee who believes himself aggrieved by a judgment, in order to place himself in a position to ask for amendment thereof in his favor, it is imperative, must expressly answer the appeal and point out wherein the judgment should be amended or changed. To ask for such relief in brief is unavailing.
Plaintiff lives near the Town of Winnfield, Louisiana, some thirty-five miles distant from the City of Natchitoches. He owned a bus that he used during the summer of 1946 to transfer pupils from Winnfield to the high school building in Natchitoches to attend the summer school then and there being conducted. Very soon after delivering his cargo of pupils to the high school building on the morning of June 13, 1946, he decided to drink a Coca Cola and to procure a cold bottle he deposited five cents in a mechanically operated vending box, owned by defendant, located in the school building, and the bottle came forth. He removed the cap and began to drink. After he had consumed the greater part of the contents of the bottle and while still drinking therefrom, Mr. Tom Elkins, coach and athletic director of the high school, who was standing near by, called to plaintiff's attention the presence of some sort of foreign matter in the bottle, but, according to plaintiff's testimony, a part of the foreign matter had already been swallowed by him. He testified that the matter "was just like a lump, I swallowed and some of the stuff stuck in my mouth, crumbs like," etc.
Mr. Elkins testified that after he called plaintiff's attention to the foreign matter in the bottle, he made a cursory examination of it and found that some of the matter was in the bottom of the bottle and some was stuck to its sides. These facts, coupled with plaintiff's own testimony as to the nature of what he swallowed, and his allegations, support a finding that the foreign matter was dirt. Dirt is not deleterious.
Mr. Elkins suggested to plaintiff that he take the bottle and contents to the defendant's plant and show same to someone there. He first went to the principal's office in the building and deposited with him five cents for the bottle, and then proceeded to defendant's plant, some two blocks away. He exhibited the bottle to two persons there, employees or officers, and then returned to his bus at the school building, bringing the bottle with him. He next drove to the office of the Parish Board of Health, approximately one-fourth mile distant. On arriving there he ascended a flight of stairs and found the health officer absent. He was told by a secretary that this officer would soon return. Plaintiff waited a few minutes and the officer not having returned, he went away, leaving the bottle and contents setting on a desk or table. He says he left the bottle there so that the contents could be analyzed, but he did not return for a report. However, he alleged that an analysis disclosed that the foreign substance in the bottle was dirt, *Page 350 
and there is no testimony in the record to disprove this sworn allegation.
After leaving the office of the Board of Health, plaintiff returned to his bus, and drove it back to the high school building. At the hour of 12:30 o'clock P.M., with the pupils aboard, he began the return trip to Winnfield. He testified that during this period, some two hours, he gagged several times and tried to vomit, but failed. His testimony in this connection is interesting. We here quote a part of it, to-wit:
"A. Well, after I drank this Coca Cola I just got the 'all overs' and just jittered all up and down, and made me gag and I tried to vomit and I gagged.
"Q. Would you, please, try to tell the court what you mean by the 'all overs'? A. Well, sir, it just made me gag and get sick all over, and just made me weak and sick at my stomach.
"Q. How long did you suffer this condition? A. Well, if I ain't mistaken, ever since that time, 'til now, but for the first three or four weeks I suffered the most, but I was sick longer."
* * * * *
"Q. Describe to the court how you rested — normally or abnormally. A. Well, I tried first to lay flat on my stomach but I couldn't sleep and then I turned over on my side but I couldn't, my insides would just turn over."
Plaintiff also testified that the day following the drinking of the Coca Cola, he made the usual bus trip from Winnfield to Natchitoches and back, and also on that day he consulted Dr. Mosley in Winnfield, who prescribed an effervescent medicine. He says that he returned to Dr. Mosley several times thereafter but does not say what the doctor thought of his case nor what he prescribed for him, if anything. He also testified that on the second Saturday following the drinking of said Coca Cola he drove in his bus to Ville Platte, Louisiana, a distance of about one hundred miles and there consulted a Dr. Attaway as to his condition; that this doctor prescribed for him and made a charge of $52.50, which he paid, but he produced no receipt or written evidence to corroborate his testimony on this score. He says that Dr. Attaway advised him to return occasionally for further examination and check-up, but that he did not follow the doctor's advice. He did not undertake to tell what this doctor thought of his case.
It is not explained by plaintiff why he journeyed so far from home to see a physician and at a time, he says, his case was in the hands of his local doctor; nor did he undertake to enlighten the court as to why he passed up many prominent physicians in the City of Alexandria, on the route to Ville Platte, and the splendid hospitals there, including one operated on charity basis by the state, in the quest for relief from his suffering and discomfort.
Plaintiff testified further that he lost time from operating his bus and had to engage others to serve for him, but he does not produce a single witness to support this statement.
It seems strange that plaintiff did not see fit to produce either of the named physicians as a witness in his behalf, nor make any effort to procure their testimony. His claim for damages is based upon the alleged ill effects, mentally and physically, the drinking of the contaminated Coca Cola had upon him. The doctors who examined and prescribed for him should know better than anyone else whether he really was sick and suffered pain and discomfort from taking into his system a small quantity of Mother Earth. He asks the court to mulct defendant in damages simply on his bare testimony.
[2] The failure on plaintiff's part to provide the court with the testimony of the above named doctors creates a strong presumption that such testimony, if produced, would not have been favorable to his case. This doctrine is well settled in the following cases: Gunter v. Alexandria Coca Cola Bottling Company, Ltd., La. App., 197 So. 159; Comforto et ux v. Cloverland Dairy Products Company, Inc., La. App., 194 So. 43.
[3] Every litigant is expected to bring to his support, in presenting his case, the best and strongest evidence obtainable. It is but natural that out of a desire to succeed he should do this. He should not ask a court to accept his unsupported testimony *Page 351 
in his desire to recover damages of another, when, according to his own statement, such testimony could be supported by expert witnesses on a subject about which the litigant is not expected to and does not, in fact, know very much.
To add further support to the suspicion that plaintiff is not entirely in good faith in instituting and prosecuting this suit for damages, he did not produce a single member of his family, a friend or an acquaintance to substantiate in whole or part the many allegations of his petition relating to the pain, sickness and discomfort that have allegedly afflicted him since drinking the contaminated Coca Cola, except the negro janitor whose duty it was to keep vending machine supplied with full bottles. This man testified:
"Q. When he returned (from the Health Office), did he appear normal what I mean is, did he appear normal physically? A. No, sir, he was all nervous to death.
"Q. What was his color? A. It was dark, and light, he just looked sick; he sure was uneasy about that Coke."
He further testified that he saw plaintiff "trying to gag."
The testimony of this witness is significant in that in his opinion, plaintiff was nervous and uneasy from the anticipation of ill effects from drinking the bad Coca Cola. Plaintiff's own testimony does not, in many material respects, support his allegations.
[4, 5] It has many times been said, in cases of this character, that the testimony adduced by plaintiff to prove his case should be weighed and scrutinized with the utmost care and caution to the end that injustice not be done. As a rule the defendant is without knowledge of the occurrence upon which the suit is based until, in many instances weeks and/or months have elapsed. A plaintiff, almost invariably, has a decided advantage over defendant from the very nature of the case; hence, plaintiff is strictly required to produce the best evidence of which the case is susceptible and which is possible of production. In this case, plaintiff utterly failed to meet this legal requirement.
Plaintiff was, to succeed herein, required to prove by a preponderance of the evidence that the bottle of Coca Cola from which he drank was manufactured by defendant company, that it contained some foreign matter when capped, a part or all of which he drank, and, in addition, that as a result of drinking this foreign matter he was made ill and suffered pain and discomfort therefrom. We are of the opinion that plaintiff has failed to meet the last mentioned requirement.
It is unthinkable that a small quantity of dirt, drunk in a harmless liquid, could produce the frightful effects upon the body of a strong, vigorous man thirty-nine years old, as plaintiff would have us believe. This condition is largely negatived by the fact that he continued to operate his bus until the close of the summer school and when regular school began in September he resumed operating the bus five days of each week over a route into Winnfield nearly twenty miles in length.
This case involves only a question of fact. We are forced to disagree with the conclusions thereon reached by the learned trial judge, and, for this reason, have given to the case most mature consideration and have at length set out the reasons forming the basis of our conclusions.
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, and there is now judgment for defendants, rejecting the demands of the plaintiff at his cost.
KENNON, J., absent. *Page 352