Plaintiff sued the Natchitoches Coca Cola Bottling Company for $1500 damages allegedly resulting from his drinking the contents of a bottle of Coca Cola manufactured by defendant. Plaintiff alleged that he was very thirsty and started drinking the contents of the bottle very hurriedly; that, having drunk most of the contents, he discovered that there was "something thick and slimy" in his mouth, which he spit back into the bottle; that he did not know what foreign substance there was in the Coca Cola, but whatever it was made him nauseated and "deathly sick" and that he was sick for several days; that he lost ten days work at $4.50 per day and incurred a doctor's bill of $10.
Defendant in answer set up that its machinery for the bottling of Coca Cola is the most modern and expensive machinery available; that the ingredients used are of the best in quality that can be procured and that same are handled in the most modern and sanitary manner; that it employs competent help and maintains a system of washing bottling and checking each bottle before delivery. This system includes the washing and sterilizing of each bottle before the syrup is placed in the bottle, and that after the syrup and water are mixed and the cap placed, each individual bottle is thoroughly inspected before it is cased and placed on the racks for distribution, and that it uses the same methods of cleaning its bottles, bottling its drinks and inspecting the bottled mixture as is used by the best and most up-to-date bottling plants in the United States. Defendant denied the allegations of plaintiff's petition and averred upon information and belief that "there was no foreign substance of any type in the bottle of Coca Cola which plaintiff drank, if, in fact, he drank any at all, which is not admitted, but is specially denied. It shows if, however, there was any substance of any nature in said bottle, that it was placed in there either by plaintiff or some other party."
The trial judge gave judgment in favor of plaintiff for $150. Defendant appealed. Plaintiff answered the appeal praying that the judgment be increased to $600.
Mr. R.A. Pourcheu testified that he operated a store in Natchitoches Parish; that he had known plaintiff some ten or twelve years and that on the afternoon in question, plaintiff came in the store and *Page 282 
served himself a Coca Cola; that "after a while" he noticed that plaintiff was gagging and caughing, and, after running to the door, came back with some "stuff" in his hand, which compared to "mothers in vinegar," he said it was "thick, reddish and slimy, thick as apple jelly." He stated that he did not look in the bottle.
Plaintiff's testimony was that he was an employee of the Department of Highways; that he went into Mr. Pourcheu's store about four or five o'clock on a hot afternoon, purchased a Coca Cola and "just turned it up and drank it down"; that he discovered something in the bottle besides Coca Cola, that he swallowed some of it and ran to the door and spit it out.
A fellow employee said he "saw the stuff" when plaintiff ran to the porch to spit it out; that it looked like "soaked rubber, crummy slimy stuff," but when asked, "Did you look at it pretty closely?" he replied, "No sir, I was on the steps." Plaintiff testified that he vomited about "a quarter from the store, again at the barn about a mile away," and that he vomited for two days after the occurrence; that his weight was about 287 pounds; that after drinking the contents of the Coca Cola bottle, he lost forty or fifty pounds.
On cross-examination, plaintiff admitted that he went to the highway barn the following day and was equivocal on the point as to whether he drew pay for that day and as to whether he took sick leave on the following Monday, Tuesday and Wednesday, for which he drew pay.
Plaintiff introduced Dr. J.M. Brown of Campti, Louisiana, who testified that plaintiff came to his office and that he was "partly nauseated and in a weakened condition caused by extreme nausea." He said that plaintiff stated that he had "drunk a 'coke' " the day before and that "something got in his mouth, he didn't know what it was." He said that plaintiff returned three days later and again six days later; that he was suffering from a "physical weakness, the nausea had subsided, but he was weak and run down."
Defendant introduced no evidence, but counsel for plaintiff and defendant agreed that the Court should consider the testimony of Mr. Ted Beasley, which was given in the case of Wade Moore v. Same Defendant, 32 So.2d 347.
The testimony of Mr. Ted Beasley, plant foreman in defendant plant, as given in the above case, was that when empty cases are returned, the broken bottles are removed and the remaining empty bottles are sent through the washer or soaker. Afterwards, employees check them for anything such as broken necks, then they are carried to the "prerinse" where a pressure spray of water is forced down the bottles to get any substance that did not come out in the soaker; that the bottles are then run through the "No. 1 caustic soda tank" which contains 2 1/2% caustic soda tank" degrees temperature and then to the No. 2 caustic soda tank which contains a 3%, solution of caustic soda at a temperature of 145 degrees; thence to the No. 3 caustic soda tank and from there to the fresh water tank, thence to the rinsing tubes which contain an arrangement that fits over the top of each bottle and forces water into the bottom of each from a pressure jet. From there the bottles go to the inside rinsing tubes with brushes that work inside the bottles and there in a No. 3 rinsing spinner of the same sort and finally an inside rinsing spray; that after passing a final inspection, they go to the "syrupers," which feed the Coca Cola syrup in from an overhead stainless steel tank through a wire screen filter; that the carbonated water is then placed into the bottle after passing through a paper disc and a cloth filter. The bottles then go to the crowner, which is 12 to 15 inches distant from the spot where the carbonated water is inserted; that the bottles then go through the "mixer" which simply turns the bottle over and thence to the "accumulative" where there is an inspection by three men as the bottles pass on the "accumulative table" in front of high powered bulbs.
The testimony does not establish that the Coca Cola bottle purchased by plaintiff contained substance of a poisonous nature, or that plaintiff's drinking from the Coca Cola bottle caused whatever upset condition plaintiff may have suffered. *Page 283 
The tendency to exaggerate in plaintiff's petition is shown by noting that, while his petition alleges "that he lost ten days work at $4.50 per day," his own admission on cross-examination was that he stayed away from work only three days, during which time he didn't stay in bed but "just laid around." After three days of "taking it easy" during which time he was paid as a part of his eighteen days yearly sick leave, he returned to work and lost no pay. In fairness it should be stated that he testified that for several days he did not do real work but just drove the truck.
The evidence in the record as to plaintiff's consumption of foreign substance from the bottle and his alleged disability does not establish his case and is insufficient to form the basis of a judgment against the defendant.
For the reasons assigned, the judgment appealed from is reversed and plaintiff's suit is dismissed at his cost.