AYRES, Judge.
In this action in tort plaintiff seeks to recover of the City of Monroe and its agent, Oscar L. Womack, damages in soli-do for personal injuries, shock, pain and suffering, as well as for medical and hospital expenses incurred as a result thereof, and for disability and loss of earnings, alleged to have been accidently sustained by her July 15, 1956, as she was alighting from a municipally owned bus which she had boarded as a fare-paying passenger.
From a judgment in favor of plaintiff against both defendants, in solido, in the principal sum of $1,200, plus $403.55 medical and hospital expenses, plaintiff, Edith Parnell, and the defendant, Oscar L. Wo-mack, appealed devolutively. The defendant, City of Monroe, appealed both suspen-sively and devolutively.
Only factual questions are presented for determination. It is conceded that passenger carriers generally are required to exercise the highest degree of care for the safety of those they undertake to transport and are liable for the slightest negligence. Coleman v. Shreveport Railways Co., La.App., 86 So.2d 590, and the authorities therein cited.
Plaintiff, a resident of Lake Providence, Louisiana, accompanied by her sister, boarded the bus near the post office in Monroe, Louisiana, near noon July 15, 1956, for the purpose of visiting in her sister’s home on Church Street in the Booker T. Washington Subdivision to the City of Monroe, and charges the defendants with negligence in the failure of the driver to keep a proper lookout, in starting the bus while she and other passengers were attempting to alight therefrom, and in suddenly starting the bus while she was on the steps in the act of alighting therefrom.
The defendants denied any acts of negligence on their part, but, in the alternative, plead that plaintiff was guilty of contributory negligence “because of the manner in which she alighted from the bus”, obviously, a mere statement of a conclusion insufficient to support the charge.
The issues presented for determination by this appeal are (1) whether plaintiff sustained accidental injuries as alleged; (2) if so, whether the bus operator was guilty of negligence constituting a proximate cause thereof, and (3) if so, the adequacy of the award.
The trial court concluded, after trial upon the merits, that plaintiff had, by a preponderance of the evidence, established the first two of these propositions. Our review of the record leads us to the conclusion that the findings of our distinguished brother of the district court were not only without manifest error but eminently correct. A brief discussion of the facts *822 on these points will suffice for the purpose of this opinion.
Plaintiff testified that when the bus stopped at her destination, she was preceded to the rear side door by one Daisy Lou Dunlap, accompanied by her child, and was followed by Irma Lee Turner and Yvonne Turner; that while in the act of alighting from the bus and when she had descended to the second step, holding with her left hand to an iron railing, the bus suddenly started up, throwing her to the ground. Plaintiff’s sister, Bernice Dunlap, on boarding the bus, left her baggage near the front door of the bus, and as it stopped at their destination, she proceeded towards the front to get her luggage but the bus started up before she alighted. The bus was therefore required to stop a second time for her to leave the bus, and, on her doing so, she saw her sister lifted from the ground by other passengers. It was on the occasion, too, of the second stop that the Turner girls left the bus.
The defendant, Womack, testified that, after initially starting the bus, one of the passengers came forward after he had driven 35 to 40 feet and requested that she be permitted to get off, whereupon he again stopped for that purpose.
Without recounting in detail the evidence given by each of these witnesses, the record shows most conclusively that as plaintiff was alighting from the bus, holding with her left hand, standing on the second step with one foot and in the act of stepping to the ground with the other foot, the bus was suddenly started, precipitating plaintiff’s fall to the ground, and that such negligent act was the proximate cause of the accident in which plaintiff was injured. No facts were alleged in defendant’s plea of contributory negligence, neither was any evidence introduced supporting the same.
The record further discloses that after the bus continued forward some four or five blocks to the end of its run and prior to its return, plaintiff was carried to a house nearby, and on the bus’s return the driver was informed of plaintiff’s injury, whereupon she was again taken on the bus, accompanied by her sister, and carried to downtown Monroe where they were granted transfer tickets and conveyed to the E. A. Conway Charity Hospital. Plaintiff was admitted to that institution for emergency treatment, in the course of which N-rays of her broken arm were made. She was later sent by ambulance to the St. Francis Sanitarium, where she was placed in bed and treated by Dr. Roy H. Ledbetter over a period of approximately a week.
The Doctor testified that upon plaintiff’s admission to the hospital, the X-rays revealed a severely comminuted fracture of the radius just above the wrist, and a splint was applied. However, on the following day she was admitted to the operating room, given a general anaesthetic, and a reduction of the fracture was carried out with traction, maintained by the insertion of pins into the hand distal to the fracture and then one into the bone of the elbow. These pins were incorporated in a cast which extended from the hand to above the elbow. After her discharge from the hospital, the Doctor saw her at home on four or five occasions during August and September, 1956.
Additionally, the Doctor noted that during the period of plaintiff’s hospitalization she complained of pain and discomfort in her back (but X-rays revealed no fractures in that area) and he concluded that plaintiff had suffered a strain or sprain of the ligaments about the lumbosacral joint, which, in his opinion, was in all probability attributable to the accident. But the witness was further of the opinion that plaintiff, notwithstanding her age of 69 years, had a satisfactory recovery and would experience no permanent disability.
Dr. J. E. Walsworth, who examined plaintiff prior to the trial, praised Dr. Ledbetter’s surgery and treatment, but was *823 of the opinion that, due to the severity of the injuries, there would he some residual effects suffered by her, particularly as to her back, shoulder, right forearm, hand and wrist, the remainder of her life. It was the Doctor’s opinion that she is permanently and totally incapacitated from doing the work of the kind and character she had formerly done, such as housecleaning, washing and ironing, gardening and picking cotton.
Dr. Irving J. Wolff of Monroe, who made an examination of plaintiff October 20, 1956, but who had not examined the X-rays, was of the opinion that the injuries sustained were sufficient to cause serious pain, suffering and disability.
Plaintiff complains that the defendants’ failure to call Dr. Alfpns R. Altenberg, an orthopedic surgeon of Monroe, Louisiana, as a witness or to take his testimony should be construed as a presumption that the Doctor’s testimony would not have been favorable to defendants’ position. The record discloses that Dr. Altenberg examined plaintiff for and on behalf of the defendants; that he was summonsed as a witness by defendants, and that plaintiff’s counsel was given to understand that the Doctor would be produced on the trial. Defendants’ closing their evidence without securing the Doctor’s testimony took plaintiff’s counsel by surprise, who moved the court that the case be reopened for the taking of the Doctor’s testimony, which plaintiff would do upon defendants’ failure. Being denied this privilege, plaintiff then sought to file in evidence a written report of the Doctor’s findings and conclusions, which was objected to, and the objection was sustained.
We are urged to invoke the general rule that a litigant’s failure to produce a witness without accounting for his absence raises the presumption that had the witness testified his evidence would have been unfavorable to the litigant. We are not unmindful of this rule and that it has application to a party’s failure to produce a physician, surgeon or orthopedist, as well as other witnesses, both lay and expert. Rider v. R. P. Farnsworth Co., Inc., La.App., 61 So.2d 204; May v. Cooperative Cab Co., La.App., 52 So.2d 74; Anders v. Employers Liability Assur. Corp., La.App., 50 So.2d 87; Moore v. Natchitoches Coca Cola Bottling Co., La.App., 32 So.2d 347; Law v. Kansas City Bridge Co., Inc., La.App., 199 So. 155; Gunter v. Alexandria Coca Cola Bottling Co., La.App., 197 So. 159; Comforto v. Cloverland Dairy Products Co., Inc., La.App., 194 So. 43; Johnson v. Demange-Godman Lumber Co., La.App., 141 So. 779.
While under the circumstances of this case, the invocation of this rule would no doubt be in order and as a result of which we would be justified in assuming that Dr. Altenberg’s testimony would not have been favorable to the defendants, we do not deem it necessary, however, to invoke the rule and predicate our judgment thereon in the presence of which we deem ample and sufficient testimony upon what plaintiff’s claim may be predicated. As heretofore stated by three experts testifying for the plaintiff, it has been established that plaintiff suffered severe and painful injuries which have effectively and permanently impaired her in making her living and her ability to look after and care for herself. Hereafter, in all probability, she will be a charge and dependent upon others. Considering that she could heretofore make her own living and support, doing her housework, as well as working in the field, and that as a result of the accidental injuries she will not hereafter be able to enjoy such activities or support, we are of the opinion that plaintiff has suffered substantial damages, even though her life expectancy may be limited to only a few years, during which, however, her dependency upon others has been materially increased by the injuries sustained.
Under the present inflationary conditions and the greatly reduced purchasing power of money, the award is inadequate *824 and should be increased. We think, under the facts and circumstances established by the record in this case, that an award of $2403.55 would be neither excessive nor inadequate.
Lastly, plaintiff urges that the fees for the three expert witnesses testifying in her behalf should be increased from $25 to $50 each and taxed as costs. The statute provides that the fees of medical witnesses shall be reasonable (LSA-R.S. 23 :- 1317) and it is further provided that such fees shall be fixed with reference to the value of the time employed and the degree of learning or skill required. LSA-R.S. 13:3666. In Carrington v. Consolidated Underwriters, La.App., 80 So.2d 427, we approved an expert medical witness fee of $50 where the witness testified in open court and a fee of $25 for each of those testifying by deposition. The record discloses in the instant case the medical experts testified in open court at considerable length under both direct and cross examination. The plaintiff has been billed by the experts for their services for testifying at the rate of $50 each. No issue has been raised as to the justification for the increase sought. Larger fees have been fixed and/or approved by our brethren of the First and Orleans Circuits, particularly the latter. See Henderson v. New Amsterdam Casualty Co., La.App., 80 So.2d 438; Radecker v. Blue Plate Foods, Inc., La.App., 80 So.2d 875; Wilson v. New Amsterdam Casualty Co., La.App., 86 So.2d 556; Bickham v. Lester J. Danner, Inc., La.App., 86 So.2d 564; O’Connor v. American Mutual Liability Ins. Co., La.App., 87 So.2d 16.
In applying the aforesaid statutory rules to the facts as disclosed by the record, we are of the opinion a fee of $50 for each of the experts is adequate but not excessive in this case in this period of inflation.
See also Bryant v. Ouchita Coca Cola Bottling Co., La.App., 99 So.2d 152.
We feel it appropriate to make this observation, that the fixing of expert witness fees in one instance can hardly serve as a precedent for other cases; that the matter depends upon the particular facts and circumstances of each case and is largely the responsibility of the trial court, subject, of course, to the duty of the appellate courts to review where an issue as to fees is presented on appeal.
For the reasons herein assigned,' it is ordered, adjudged and decreed that the judgment appealed be amended by increasing the award in plaintiff’s favor to the sum of $2403.55, and fixing and taxing as costs the fees of the expert witnesses at $50 each, and that, as thus amended, the judgment is hereby affirmed.
Amended and affirmed.