ELLIS, Judge.
This suit was filed by E. A. Dozier, individually and on behalf of his minor daughter, Mary Ann, for property damages, medical bills and alleged personal injuries resulting to the minor as a consequence of an automobile accident which occurred on December 7, 1957, in the City of Baton Rouge, Louisiana. Subsequent to the institution of the suit and prior to the trial, his minor daughter was emancipated by marriage and substituted as a party plaintiff.
The automobile of the defendant driver struck the rear end of the automobile owned by plaintiff, E. A. Dozier, and being driven at the time by his minor daughter, Mary Ann, and prior to the trial in the district court counsel stipulated that “in so far as negligence on the part of the defendant is concerned, that it is admitted by the defendant and that the policy limits of the insurance policy involved is $5000.00 for any one person and $10,000.00 for any one accident.” This stipulation left only the question of damages. At the termination of the trial, and prior to the filing of the note of evidence, with oral reasons assigned, the lower court awarded the plaintiff, E. A. Dozier, the sum of $161.58 for the repair of his automobile together with the sum of $40 for the bill of Dr. Thomas Campanella and one $4 drug bill. The plaintiff, Mrs. Mary Ann Bartus, was awarded the sum of $1,000 for personal injuries.
The defendants have appealed and state in argument and brief that their appeal is limited to the award of $1,000 for personal injuries to Mary Ann Bartus and to the award to E. A. Dozier for medical and drug bills, supra, in the sum of $44, The plaintiff, Mary Ann Bartus, has answered the appeal by motion and asked that the award to her be increased to the sum of $5,000.
*186 The main complaint of the plaintiff, Mary Ann Bartus, is that the accident brought about irregular and prolonged cycles of menstruation and extreme pain in her lower back, and which also resulted in curtailment of her physical activities.
Counsel for defendants relies principally upon a contention that the plaintiff has failed to sustain by sufficient evidence the first principle applicable in any law suit to the effect that a plaintiff must prove its case by a preponderance of the evidence, and has cited a few of the many cases that have reiterated this settled doctrine. Morris v. Vining, La.App., 49 So.2d 458; Pinkney v. Cahn Inv. Co., La.App., 32 So.2d 345; Moore v. Natchitoches Coca-Cola Bottling Co., La.App., 32 So.2d 347; Walker v. Purex Corporation Ltd., La.App., 113 So.2d 312.
On the other hand we do have a case in which the learned judge of the District Court was of the opinion that the plaintiff had proven by a preponderance of the evidence to a reasonable certainty a causal connection between the accident and alleged injury, and unless this judgment is obviously, clearly or manifestly erroneous it must be affirmed.
In order to determine the issues it is necessary that the facts be reviewed. As stated, this case involves a rear end collision which occurred on December 7, 1957, and in which the automobile being driven by the minor daughter of E. A. Dozier was knocked forward a distance of 22 feet. Apparently, immediately after the occurrence of the accident there was no evidence or belief by plaintiff, Mary Ann Bartus, that she had been injured, however, there is testimony by her and by her mother that the next day she was very sore as a result of the accident, and could not go through with her full schedule of physical education which consisted, among other things, of tennis. She was unable to participate in sports for about a week. In addition it is established beyond the least doubt that Mrs. Mary Ann Bartus’ main complaint was a recurrence of an irregular and prolonged menstrual cycle and pain in the lower part of her back “below my waist, a good bit below my waist * * * ” with pain radiating down into one of her legs.
Mrs. Bartus did not consult a doctor until she went to Florida to visit relatives between December 24th and January 2nd, the latter date the time she returned to Baton Rouge, Louisiana. During this period she consulted a doctor who was a relative with regard to the return of her menstrual trouble and the low back pain into the leg. The treatment prescribed was a heat pad to the back. Mrs. Bartus had suffered prior trouble with her menstrual cycles and the duration of them. She had always gone to Dr. Cary Dougherty of Baton Rouge for this trouble and first visited him on the 19th of October, 1954. Dr. Dougherty testified in detail with regard to this trouble in 1954 and that he saw her after the first visit on the 6th of November, 27th of January, 1955, at which time Mrs. Bartus was menstruating approximately twice a month which the doctor described as a failure of ovulation. The trouble recurred in December of 1955 and Mrs. Bartus returned for treatment to the same doctor. In January of 1958 Dr. LaNasa, who regularly treated plaintiff for acne, was told by the latter of the recurrence of her menstrual difficulties and he immediately made an appointment for her with Dr. Dougherty. Dr. Dougherty made another examination and he gave her the same treatment as he did in 1954 and 1955. Dr. Dougherty in summation of his conclusion stated that according to his records there was no indication that an accident in 1957 had any effect on her menstrual difficulties and when asked on re-cross examination if her condition was any different in January of 1958 than it was in December of 1955 when he was treating her answered, “My records indicate that the condition was essentially the same.” It is also true that he testified that the regular monthly cycle is tied in with the emotions and that it was the opinion of some respected authorities that the monthly *187 •cycles could be influenced by shock, that one might sustain in an automobile accident. Dr. Dougherty stated, however, that he would be unable to state the degree of probability of the causal connection between the accident and the irregular menstrual cycle. The overall effect of Dr. Dougherty’s testimony is that the menstrual difficulty of the plaintiff was a recurrence of prior difficulty and not connected with the occurrence of the collision. This interpretation of Dr. Dougherty’s testimony is strengthened by his statement that in 19SS when Mrs. Bartus visited him with the same trouble as in 1954 she made infrequent visits due to the fact that she was in school and unable to attend his office for regular treatments and he stated “ * * * I had not considered this to be complete treatment. I have no notation of that, but from my memory I would recall that I had not completed treatment and had not discharged her from successful treatment. Q. When she came to 'see you back in January of 1958 did you make inquiry at that time as to whether or not her trouble had cleared up in the interim? Between that visit and her last visit? A. The story as I have noted here was that she still had frequent ■episodes of bleeding several times a month. I have no notation here whether she had regular menstrual periods prior to that ■or irregular.” However, according to Mrs. Bartus’ testimony she had not had any trouble subsequent to 1955 until sometime after the accident in 1958.
Mrs. Bartus first went to see Dr. Campanella, an expert in the field of orthopedics, on March 10, 1958, complaining of pain in her back — “having difficulty with the lower back, particularly on the right side.” In addition she told Dr. Campanella that the pain in her back at times would shoot down to the right thigh. An examination revealed some muscle spasm or tightness of the muscles with some tenderness over the region of the tenth dorsal vertebra on the right side, which is shown to be high up in the back, not in any way near the lower back below the waist. X-rays were negative. Dr. Campanella again saw Mrs. Bar-tus on April 22, 1958, and she was still having “a little difficulty with her back, however, she had improved a great deal but I started her on exercises to get rid of the soreness and tenderness.” She returned to this doctor on September 23, 1958, with a history of an acute backache which had been present for some three or four weeks. An examination on this date was essentially the same in that the doctor found soreness over the region of D-10 and still a little tightness on the right side. He thought that plaintiff had a strain of the back muscles on the right side and that her disability of more or less of a nuisance type. Dr. Campanella presumed that the spasm he found was due to trauma, however, on cross examination, when asked about the irregular menstrual period as a source of the spasms in the back, answered: “No, because the female organs will radiate the pain in the lower part of the back. Her pain was more or less from the chest down, in other words, it was at the junction of the lower ribs and the female organs, of course, are much lower and they would cause pain in the lower part of the back and if there is any pressure there on any nerve root it could cause pain in the back of her thigh. That part could be explained on the neuritis coming, say, from something wrong with the female organs, the thigh pain.” He was positive in his testimony that if there was no confusion on the part of Dr. Dougherty or no confusion on the part of the patient as to the source of pain and if she was seeking medical aid only for the menstrual difficulty, that the trouble in her back when she came to him could be attributable to a mild cold or “to almost anything.” In addition he stated that if plaintiff had no trouble in the region of her back around D-10 and no spasm high in the back before her visit to him that the accident “probably had nothing to do with it.”
The plaintiff on the trial of the case specifically stated that the only trouble or complaint that she had with her back was the *188 low part of the back below the waist with pain radiating into the thigh. That was the part of the back she stated was hurting her when she went to the doctor who is a relative of hers on a visit to Florida. She also definitely stated on direct examination that no part of her back above the waist was hurting her when she went to see Dr. Campanella.
Based upon the above facts it is the contention of the defendants that plaintiff has failed to prove any causal connection between the accident and the prolonged and irregular menstrual cycle as required by law.
Plaintiff’s one and only complaint is of low back pain below the waist, which the medical testimony without exception shows is attributable to her menstrual difficulties which first occurred in 1954 and again in 1955 and, according to Dr. Dougherty, the specialist who treated her on each occasion for this trouble, when she returned to him in 1958 he noted a history of a recurrence, as we understand the record, prior to the date of the accident, although the plaintiff testified positively that the 1958 difficulty reoccurred after the accident. The plaintiff failed to produce any medical testimony that could be accepted with any certainty that the menstrual difficulty reoccurred as a result of the accident. Also, Dr. Campanella attributed the low back pain to the menstrual difficulty, and even after Dr. Campanella found high muscle spasm in the 10th dorsal vertebra, the plaintiff’s testimony was to the same effect that she suffered not a bit from anything above the waist. Dr. Campanella thought that the spasm found around'the 10th dorsal vertebra could be attributed to almost anything, even a cold, and concluded that it was of a minimum nature. We therefore conclude that the evidence does not show a causal connection between the occurrence of the menstrual difficulty and the resulting pain solely complained of by the plaintiff. On the other hand the record does show, according to Dr. Campanella, that she had muscle spasm of the 10th dorsal vertebra which was of a minimum nature. If Dr. Campanella was correct in his findings, the plaintiff, prior to her visit which was some three months subsequent to the accident, was not aware of any pain in that region or that she had been injured in any manner, other than the recurrence of her previous menstrual difficulty which the doctor attributed to definite medical reasons, not connected with the accident.
The only other testimony of any injury or pain was by the plaintiff and her mother to the effect that as a result of the accident plaintiff was very sore and limited in her physical activities as a result of the soreness for a short period of time, something like a week.
We feel that an award of $300 would be sufficient for plaintiff’s injuries resulting from the accident.
It is therefore ordered that the judgment be amended by reducing the amount awarded to $300.
Amended and affirmed.