LOTTINGER, Judge.
This is a suit in workmen’s compensation for total and permanent disability to petitioner. The defendants are P. J. Gomer and his compensation insurer, Security Insurance Company of New Haven. The Lower Court awarded judgment in favor of the defendant and petitioner has appealed.
The petitioner filed suit for total and permanent disability because of injuries resulting in an alleged accident while working as an employee of defendant’s service station, on or about October 10, 1956. Petitioner also seeks penalties and attorney fees. The defendant filed an answer denying an accident, denying that petitioner was injured while in its employ, and further claiming that petitioner had been totally and permanently disabled from an injury prior to his employment with defendant.
The Lower Court awarded judgment for defendant and dismissed petitioner’s suit.
The record shows that defendant, P. J. Gomer, is the owner and operator of a service station situated in Eunice, Louisiana. The primary business of said business is the sale and servicing of automobile, truck and tractor tires. Petitioner was hired as the bookkeeper of the said business. As the keeping of books consumed only some two hours per day, petitioner also acted as an assistant manager, and took charge of the business whenever the owner was absent. There is testimony in the record to the effect that petitioner handled heavy tires and wheels, and that some one-third of his time was devoted to doing heavy work. We do not believe there is a doubt but that his job would be considered “hazardous” under the Workmen’s Compensation Act, LSA-R.S. 23:1035. At least the defendant has no argument on this point.
The evidence, which is very conflicting, shows that on the morning of October 24, the petitioner was al®ne at the shop between 11:00 and 11:30 o’clock a. m. Petitioner claims that he attempted to move a large tractor tire which was propped up against the wall of the building. He claims that as he was moving it, he tripped over a jack, and the tire fell on him. He claims that he was able to extricate himself and was able to get to the front of the shop when Ernest Guillory, a fellow employee, returned from his lunch. As a result of the accident, petitioner was hospitalized for some five days, and sustained a painful and disabling back injury.
Ernest Guillory testified at the trial to the effect that he and petitioner had been drinking beer all morning. He claimed that, upon his return from lunch, petitioner was sitting at the desk in the office and told him that he had hurt his back. Guillory even went so far as to testify that peti *790 tioner offered him a share of his judgment if Guillory would testify in his favor. Since the case has cqme up .on appeal, a petition for remand has been filed, for petitioner which is based upon the fact that Guillory claims his testimony; at -the trial was false, and supporting affidavits are attached to the said petition.
Three witnesses testified to the effect that they saw bruises upon the back and left arm of petitioner while he was in the hospital subsequent to the alleged accident. These witnesses are Sanders Boone, petitioner’s brother, Mrs. Leon Boone, petitioner’s wife, and Mrs. Clovis Thibodeaux, an aunt by marriage to petitioner. • Although petitioner claims that he showed the bruises tó some of his co-workers, none of them testified that they saw the bruises. !
The record also shows that petitioner had received a similar injury -during the year 1952, while in the employ of Central Lou-, isiana Electric Company. He then claimed permanent and total disability for said injury, and the matter was compromised for the sum of $3,710. There is evidence to the effect that subsequent to said injury,’ on or about April 23, 1956, the petitioner had complained of pain in his back while work-1 ing for the defendant, P. j". Gómér. •
The record further shows that prior to the alleged injury of October 24,. 1956, petitioner made application for a job with Peoples Finance Company. As stated above, petitioner was hospitalized for a period of five days following the alleged accident, after which time he returned'.to work for defendant Gomer until November. 10, when he went to work for Peoples Finance Company, because he felt he could, better himself. - ■ ’ ■
The testimony of the petitioner is not very impressive. The Lower Court commented on the poor memory of the petitioner, saying: “ * * * the witness ■ has answered an unusual number of questipns, T don’t remember’. If a man doesn’t remember, he should say so, but this is rather an unusual number.” Although the petitioner was very emphatic in his answers to some questions, he was unable to remember the answers of other questions of equal importance. There is also much conflict in-tlie testimony' of petitioner,-: and there is-conflict between his testimony and that of his wife. Petitioner admitted that he had a glass of beer on the morning of the alleged accident, and prior tó eating his breakfast. His-wife, testified that he did-not have a glass of beer.. According to their testimony, his wife went out, .to her father’s farm to get a hen on the morning of the alleged accident. She returned at about 10 o’clock, made a chicken .gumbo with the hen, fed the children, and left at 11:30 o’clock to return to her mother’s home. This impresses us as an unusually short period of time in which to cook such a meal. ■
The record shows that after the alleged accident, the petitioner was treated by a Dr. Shannon. The facts show that Dr. Shannon is no longer practicing in Eunice, but left approximately a month prior to trial to -take up his practice of' medicine in West Monroe. Dr. Shannon did not testify either in perspn or by deposition. We think hi's testimony would' have been of the utmost importance, and cannót conceivé of any reason why the petitioner did not take his testimony, other than that it would have been adverse to petitioner’s claim. Dr. Shannon was the petitioner’s own physician, and the Courts have held that failure to secure the testimony of the petitioner’s own physician in a workmen’s compensation suit, 'when the physician has treated qr examined, petitioner for the alleged injuries, raises a presumption that such testimony .would be ' adverse to petitioner’s case, when the absence of said -testimony is not reasonably explained. Kenner v. Fidelity and Casualty Company of New York, La.App., 96. So.2d 509.
Dr. William L. Meuleman testified by way of deposition. He stated that he saw petitioner'fbr the first-time on February 14; 1957, which was almost four months after the alleged accident. Petitioner was placed *791 in the hospital the following week, where he remained for several days, Dr. Meule-man again examined petitioner on March 9th and April 4th.
Dr. Meuleman testified that petitioner gave him the history of the accident on October 24, 1956. Since the accident petitioner told him that he continued to have pain in the back and minor urinary complaints. Dr. Meuleman testified that, in his opinion, the petitioner had a ruptured disk, that there was nothing to indicate that the injury was a recent one as distinguished from one some three years prior to his examination. It appears that all,the symptoms and all the findings of Dr. Meuleman could very well have been traced back to' the injury in 1952, and the only thing which showed it to be an injury of as recent as October 24, 1956, was the history as related to Dr. Meuleman by the petitioner. Dr. Meuleman stated that petitioner told him that he had sustained a ruptured disk in 1952, and the injury was the same. Dr. Meuleman did testify that the alleged accident, as related to him by the petitioner,' could have caused a flare-up of the old in- . jury. However, it was some four months after the alleged accident that Dr. Meule-man first saw the petitioner, and he found nothing which would indicate a recent accident except, of course, the history as related to him.by the petitioner.
A letter from Dr. Thomas A. Kimbrough was introduced by defendant. The petitioner was not examined by Dr. Kimbrough until February 19th, 1957. Dr. Kimbrough examined petitioner for a bladder condition, and Dr. Kimbrough’s letter reveals that' petitioner had a bladder neck contracture in 1952. Dr. Kimbrough’s letter stated that his examination revealed the petitioner to • he in no particular distress.
We therefore are presented with the problem of an alleged accident in October of 1956, but we have no medical testimony until some four months later. This raises a serious question in our minds as to whether or not there was an accident,'and," if there was such an accident, was it the cause of the present disability of petitioner. Wé feel that the testimony of Dr. Shannon was of the utmost importance to the’ petitioner’s action, and the petitioner should have presented his testimony. Failure to do so, when Dr. Shannon was apparently the only doctor who treated petitioner for a period of some four months subsequent to the alleged accident, leads us to believe that Dr. Shannon’s testimony would have been adverse to the petitioner’s claim.
We realize, however,' that the lay testimony of some of the witnesses indicates that there was an accident. This is shown by the three witnesses, .’all of whom were related to petitioner, who testified as to the marks on the back and left arm of petitioner. However, the record reveals that the petitioner remained in the hospital for a period of five days, and then returned to his same-work, where he remained for some period of time before going to work with the Peoples Finance Company. Another point which we think is important, is that the petitioner had applied for his job with Peoples Finance Company prior to the time of the alleged accident.
We feei that the petitioner has failed to prove his case by a preponderance of the evidence. Certainly, even conceding that there was an accident, the evidence fails to disclose a causal -connection between the accident and the present disability of petitioner. Dr. Meuleman found the petitioner to be disabled, however, the only connection he could make between the disability and the accident was based upon the history as given him by petitioner. It could very well be that the alleged accident, resulted in no disability at all, and that the disability was caused directly by the accident of 1952.
Furthermore, while we are not favored with á written decision of the Lower Court, the Appellate Courts of this state have consistently refused to reverse the factual findings of the Lower Courts except for obvious error. We are unable *792 to find any obvious error in the decision of the Lower Court. Even ignoring completely the testimony of the turncoat witness, Ernest Guillory, we still feel that the petitioner has failed to prove his case. We fail to see where the remanding of this case would serve any useful purpose. We therefore deny the motion to remand.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed.
Judgment affirmed.