SAMUEL, Judge.
Plaintiff, who suffered a back injury while employed as a laborer, instituted this suit against the compensation insurance carrier of his employer and obtained a judgment awarding compensation for seventy-one weeks, from July 29, 1959, through December 6, 1960, at the rate of $35.00 per week, subject to a credit of eight weeks paid by defendant at the rate of $26.00 per week, together with certain medical expenses and an expert’s fee which were taxed as costs. The defendant has appealed contending that the judgment should be reversed and the suit dismissed or, in the alternative, that compensation benefits should not extend beyond December, 1959. Plaintiff has neither appealed nor answered the appeal taken; he contends simply that the judgment should be affirmed.
Plaintiff’s back was injured on July 29, 1959, when he felt pain in the lower back area while attempting to lift a flat car off its tracks. Two days later the pain increased but his employer was unable to send him to a doctor on that day, Friday, due to the fact that it was after 5 o’clock and the doctor’s office was closed. He was sent to the employer’s doctor on the following Monday and received treatment from him, Dr. Irby J. Hurst, Jr., until August 21, 1959, when upon being informed by the doctor that he could resume light work (apparently on the following Monday) plaintiff did not return 'for further treatment. Neither did he ever return to work. While being treated by Dr. Hurst he complained of some urinary trouble and this doctor sent him to Dr. Fischman. On November 9, 1959, plaintiff’s attorney sent him to see an orthopedic surgeon, Dr. Brian M. Unkauf, who, plaintiff testified, informed him that he would be able to return to work in three weeks. He was also examined by defendant’s orthopedic surgeon, Dr. Irving Redler, on December 28, 1959.
Later plaintiff went to Charity Hospital in New Orleans and received some treatment as an outpatient in the form of exercises and medication at that hospital’s or *826 thopedic clinic from March 2 through March 30, 1960, after which time he voluntarily did not return for further treatment. He was seen by Dr. Edward T. Haslam, an orthopedic surgeon, on September 23, 1960, and received fourteen heat and massage treatments under that doctor’s supervision. He was discharged by Dr. Haslam on December 9, 1960.
At the time of trial Dr. Hurst had moved out of the State of Louisiana and, by stipulation between counsel, his reports were received in evidence. These reports are to the effect that the injury suffered was a sacroiliac strain, that the treatment given was bed rest, analgesics and heat, and that the plaintiff was able to resume light work on August 24, 1959.
The report of Dr. J. L. Fischman, a urologist, was also received by stipulation. Dr. Fischman was of the opinion that plaintiff’s back trouble was not caused by any urological problem and we note that plaintiff makes no such claim at this time.
Dr. Unkauf, although available, was not called as a witness by the plaintiff. Plaintiff attempted to introduce this doctor’s report in evidence but, upon objection by the defendant, the court allowed the report to be introduced only for the limited purpose of showing that plaintiff had actually seen this doctor.
Dr. Redler, who was called by defendant, testified that on the only date he saw the plaintiff he made an orthopedic examination, which included an x-ray examination, involving a complaint of pain in the back. He was unable to find any muscle spasm or limitation of motion and all of his findings were negative. He was of the opinion that the plaintiff did not present any evidence of disability affecting his lower back and at the time of the examination was capable of performing whatever work he had been doing immediately prior to his injury.
The Charity Hospital reports which were introduced in evidence (no testimony other than that of plaintiff himself was offered in connection with these reports) are in a handwriting extremely difficult to decipher. The diagnosis, apparently given on admission only, was “possible back strain”.
Dr. Haslam, who was called by plaintiff, also made an orthopedic examination, which included an x-ray examination, and found a little or slight muscle spasm during the muscle maneuvers with .minimum restriction of bending through the lower lumbar spine. The examination was otherwise negative. Under Dr. Haslam’s supervision plaintiff was then given the treatments we have already mentioned. On this doctor’s-second and final examination, on December 9, 1960, the objective signs of muscle spasm and limitation were no longer present. Accordingly he felt that plaintiff was able to return to his former occupation at the time of the second examination.
Three lay witnesses, all for the plaintiff, also testified. They were: the plaintiff himself, the plaintiff’s wife and a fellow employee who worked with the plaintiff at the time of the trial.
Some of the plaintiff’s testimony is contained in what already has been set out above. Generally the balance of his testimony is to the effect that he had been in excellent health prior to the injury; that he had suffered back pain continuously since the injury to the time of his last treatment under Dr. Haslam; that he had not worked from the time of the accident until. July 7, 1960, at which time he obtained a job at Schwegmann’s as a porter cleaning floors with a machine; that he has never done the same type of work as that which he was engaged at the time of the injury;, that he is unable to do such work; and that, since the injury, he has never been able to lift anything of a heavy nature, avoiding such lifting on his present job and at home. He admits that he has never attempted to do any such lifting.
Plaintiff’s wife testified that around the house he had complained of pain on frequent occasions, and had not done any lift *827 ing, since the injury; that she had done such work herself.
The fellow employee testified that while working at Schwegmann’s the plaintiff had never done any lifting of any kind because he (plaintiff) said he was unable to do so.
We note that plaintiff has complained of pain at every visit to all of the doctors involved, including his last visit to Dr. Has-lam, and that both Dr. Haslam and Dr. Redler say it is unusual for a lumbo-sacral strain of the type suffered by plaintiff to last for a period of well over a year and to be disabling all through this period.
Defendant contends that plaintiff exaggerated the extent of his injury and the pain he suffered in connection therewith and that the medical testimony should be considered as preponderating in favor of the defendant in view of the number of doctors involved on the one side as opposed to the other, particularly in view of the presumption arising from the failure of plaintiff to call Dr. Unkauf as a witness and the apparent inconsistency of Dr. Has-lam’s evaluation of plaintiff’s complaints of pain during both the first and last examinations conducted by Dr. Haslam.
Plaintiff did exaggerate his pains and such exaggeration is a factor to be considered in arriving at our conclusion.' Nor are we impressed by the testimony of plaintiff’s two lay witnesses and are of the opinion that a determination of this case must rest solely upon the medical evidence and testimony.
 We must presume that the testimony of Dr. Unkauf would have been unfavorable to plaintiff. For the failure to call an available witness gives rise to a presumption that such witness’s testimony would be unfavorable or adverse to the litigant who failed to call him. Mullins v. Seals, La.App., 103 So.2d 582; Boone v. Gomer Tire Service., La.App., 99 So.2d 788; Rider v. R. P. Farnsworth Co., La. App., 61 So.2d 204; Moore v. Natchitoches Coca Cola Bottling Co., La.App., 32 So.2d 347. But the weight of this presumption is at least substantially lessened by the fact that, some four months after his one visit to Dr. Unkauf, Charity Hospital did treat plaintiff for the back injury.
It is true that on his first examination Dr. Haslam found no objective evidence of pain or reason therefor beyond the slight or minimal muscle spasm and restriction of bending and that even this evidence was absent on' the second examination, despite which plaintiff complained of pain on both examinations. But the doctor explained this apparent discrepency to our satisfaction when he testified that he felt the complaints of pain on the second examination were psychogenic or exaggerations, a common situation in a majority of such cases and of little importance concerning the doctor’s opinion as to whether or not plaintiff could return to work, but were genuine on the first examination because of the presence at that time of the muscle spasm in the region where the pain occurred, which muscle spasm is not under voluntary control and is an objective physical finding confirmatory of some pain.
 Generally the testimony of an attending physician who examined and treated his patient over a period of time is entitled to more weight than that of the physician who examined the patient only once and then not for purposes of treatment but simply in connection with litigation. See Istre v. Molbert Bros. Poultry And Egg Co., La.App., 125 So.2d 436; Morris v. Supreme Bedding & Furniture Co., La.App., 126 So.2d 412. Following this jurisprudence we are of the opinion that the trial judge did not commit error in relying upon the testimony of Dr. Haslam, and the Charity Hospital reports, as opposed to the other medical testimony, or lack thereof.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.
Affirmed.