REID, Judge.
Plaintiffs, husband and wife bring this suit for damages as a result of an automobile collision which happened on May 29, 1963 at about 5:30 P.M., on Highway 20, in the Parish of Terrebonne, about three and a half miles west of Louisiana Highway 309. Mrs. Rosalie Leglue Ourso was a guest passenger in the right front seat of a 1957 Ford sedan owned by her husband Clarence H. Ourso and operated by Agnes R. Leglue, her sister-in-law.
The car was struck from the rear by a 1960 Chevrolet owned and operated by one Eulen J. Bergeron. Plaintiffs brought this suit against Lumbermens Mutual Casualty Company, the insurer of the Chevrolet station wagon in a direct action suit. The suit asked for $20,000.00 damages to Mrs. Ourso for pain, suffering and mental anguish, physical injury and disability. Clarence H. Ourso asked for the sum of $1500.00 medical expenses, auto damage $98.00 and future medical expenses $500.00, for a total of $2098.00 with interest and costs
The defendant filed an answer, admitted the insurance coverage but denies that the accident was caused by the negligence of Bergeron and claims that it was caused by the negligence of Mrs. Leglue in bringing the vehicle to a sudden and abrupt stop without previous warning. In the alterná-tive the contributory negligence on the part of Mrs. Ourso was plead for acquiescing in the actions of the driver of her car and failing to warn her of impending danger.
The case was tried in the Lower Court and the Trial Judge rendered judgment with written reasons in favor of the plaintiff Clarence PI. Ourso in the amount of $2410.69 and in favor of Mrs. Ourso in the amount of $4500.00 for pain and suffering. Judgment was rendered and signed on June 10, 1965 and on June 15, 1965 plaintiff filed a motion for a new trial after having changed attorneys. The motion for a new trial is on the grounds that there was newly discovered evidence which should tend to increase the award and that the newly discovered evidence could not be ascertained prior to the date of the trial on the merits. An affidavit was annexed to this motion signed by Mrs. Ourso in which she alleged that since the trial she did not take any more of the shots she had been taking with muscle relaxant shots and that beginning in the month of February 1965 she had fallen to the floor on at least 30 different occasions and that as a result of these falls she had to resort to using a wheel chair. She further alleged that she had taken pain pills and in spite of taking the said pills she is constantly subjected to excruciating pain, and as a result of this pain she had not been able to have sexual intercourse since the cessation of the said shots.
The Trial Judge on the same date that this motion was filed denied the application for a rehearing.
From this judgment both sides prosecute this appeal.
The facts show that on the day of the accident Mrs. Ourso accompanied by her sister-in-law Mrs. Agnes R. Leglue had driven her husband to work at Bayou Boeuf and Mrs. Leglue and Mrs. Ourso were returning from this trip. It was raining and Mrs. Leglue had turned on the lights and windshield wipers. When they reached the point between Donner and Chacahoula an accident had occurred just before their ar *18 rival and traffic ahead of Mrs. Leglue had come to a stop. Mrs. Leglue had applied the brakes on the Ourso car and she testified that she had come to a stop when suddenly she was struck in the rear by the Bergeron car, cattsing about $98.00 worth of damage to the Ourso car and some $250.00 to $300.-00 damages to the Bergeron car. Plaintiff in his brief sets out two errors on which he asks for reversal of judgment of the Lower Court. One was the refusal of the Trial Judge to grant a new trial and second, on the inadequacy of the award.
Defendant in his appeal sets out as an error that the award was excessive and should be reduced. The issue of liability is admitted and the only question before the Court is the correctness of these assignments of error.
The trial Judge in his written reasons analyzed the testimony of the doctors and the plaintiff in regard to her injuries, and we are going to quote with approval from his said written reasons:
“Mrs. Ourso testified that the impact caused her to be thrown around inside the car and ‘her low back started hurting her right away and later pain developed in her neck.’
Mrs. Ourso testified she visited her family physican, Dr. R. T. Ribando. The doctor testified that physical examination revealed whiplash type of injury of the neck and also lower back of injury. He prescribed the usual treatment for such injuries and when she failed to improve he prescribed a lumbo-sacral corset which she began to wear in June of 1963. When the first lumbo-sacral corset became too loose for comfort he prescribed a second one. The doctor further testified that two or three months later he tried to get Mrs. Ourso to quit wearing the corset but she contended that because of pain she was unable to do so. Dr. Ribando treated Mrs. Ourso for neck complaints and for the menopause for eight months following the accident. She received a number of shots for the menopause and given prescriptions for muscle relaxants and a prescription for ‘nerves’. Dr. Ribando did not supervise or question Mrs. Ourso concerning her use of the drugs. He had no idea at what rate or to what degree the drugs were being taken by her. She visited the Doctor on many occasions complaining that the drugs were not relieving the pain and Dr. Ribando testified that he would then prescribe another drug. She wore a lumbo-sacral corset prescribed by Dr. Ribando throughout the eight month period. She was examined by the doctor who states that muscle spasm was still present eight months following the accident and sent her to an Orthopedic Specialist, Dr. L. L. Pollingue.
Dr. Pollingue examined Mrs. Ourso and found no muscle spasm present. In his opinion, Mrs. Ourso had completely recovered from any low back or cervical injury resulting from the accident. At the time of his examination, her sole difficulty was postural, brought about by excessive use of the lumbo-sacral corset which she wore for eight months. He testified that he does not permit his patients to wear lumbo-sacral corsets any longer than twelve weeks since this is the period during which maximum benefit can be derived. In the case of Mrs. Our-so, Dr. Pollingue stated that he would not have had her wear the corset as long as she did and its excessive use complicated her condition.
She was placed on a regimen designed to wean her from the corset and discharged by Dr. Pollingue as able to ‘resume her normal activities’. The doctor described her improvement as marked during the first two weeks of the treatment with further progress to the date of her discharge.
Mrs. Ourso was seen by Dr. H. R. Soboloff, another Orthopedic Specialist, on February 7, 1964. His testimony concurs with the testimony of Dr. Pollingue in that he could find no evidence of any injury to the neck and low back related *19 to the accident. In addition, Dr. Soboloff stated that use of a lumbo-sacral corset for more than 8 to 12 weeks would produce low postural difficulties since prolonged use created shortening of the back muscles. Dr. Soloboff also noted that all of the voluntary and involuntary motions of Mrs. Ourso were normal.”
The Trial Court permitted plaintiff to amend his petition instanta for the reason that the $1500.00 alleged as medical expenses and an estimated $500.00 for future medical expenses would not cover the entire amount of these expenses. This was done verbally and the defendant entered a verbal denial of the amended petition.
The Trial Court awarded special damages to the plaintiff Clarence H. Ourso, as follows:
1. West Bank Drug Center, drugs $1038.87
2. Cash receipts, drugs 84.40
3. Taxi receipts 35.10
4. Webber Surgical Appliances (lumbo-sacral supports and surgical brassiere) 58.72
5. Bridge tolls .60
6. Dr. R. T. Ribando 740.00
7. Edmond B. Story, Physical Therapist 300.00
8. Dr. B. L. Pollingue 55.00
9. Gasoline receipts 38.90
This totals $2351.59.
The Court ruled that the item of $38.90 for gasoline receipts item No. 9, was not proven with sufficient particularity, and subtracting this amount leaves the sum of $2312.69. The defendant stipulated the property damages to plaintiff’s car in the amount of $98.00. The total award with this added came to the sum of $2410.69.
We are going to take up first the question of plaintiff’s right to a new trial. Plaintiff in his brief sets out facts which he claimed would support the new trial and change the result. However, these facts are not set up in the supporting affidavit and all we can consider is what is alleged in this affidavit.
There are two main things, one that she has discontinued taking certain medicines as a result of which she fell some thirty times, and that beginning in February 1965 a week or so after the case was tried. She suffered a good deal of pain and that the last year she has not been able to have sexual intercourse since she stopped taking the shots.
The Trial Judge gave no reason for refusing to grant the motion for a new trial but according to the affidavit this testimony seemed to be more accumulative of her suffering and pain. Since the case was tried on January 27 and she stopped taking any more of the shots and started falling on the floor, her attorneys had ample time from February when this started until June 10 the date of the rendition of judgment to ask that the case be reopened to take additional testimony. This they failed to do. With regards to the question of having sexual intercourse the testimony of her husband on the trial on the merits was that he had not slept with her since the accident. We, therefore, conclude that the Trial Judge was right in overruling the motion for a new trial.
On the question of quantum we will take up plaintiff’s contention first namely, that the award was not sufficient, and should be increased. Both of the doctors, Dr. Pollingue for the plaintiff and Dr. Soboloff for the defendant testified that Mrs. Ourso wore a corset for some eight months which was excessive as Dr. Pollingue testified twelve weeks would have been sufficient, and Dr. Soboloff testified that from eight to twelve weeks would be sufficient time in which to use a corset in this type of injury.
The testimony was that she used pain relieving drugs and tranquilizers during the entire period of her illness after the accident. She was also suffering from the menopause but Dr. Ribando testified that all of the receipts and bills covered the services rendered only as a result of the injuries received in the accident. Both Dr. Pollingue and Dr. Soboloff in addition testified that her difficulty was postural brought on by the excessive use of the *20 lumbo-sacral corset, and that she was fully recovered from her injuries.
The Trial Judge awarded her the sum of $4500.00 which we think is adequate under the circumstances.
The Trial Judge after analyzing the testimony of the three doctors who testified, followed our Brothers of the Third Circuit in the case of Rusk v. Allstate Insurance Company, La.App., 167 So.2d 205, which case held as follows:
“We are mindful that ‘(g)enerally the testimony of an attending physician who examined and treated his patient over a period of time is entitled to more weight than that of the physician who has examined the patient only once and then not for purposes of treatment but simply in connection with litigation’. Thomas v. Fidelity & Casualty Co. of New York, La.App. (4th Cir.), 136 So.2d 824, 827. It has also been established that ‘the testimony of a specialist in orthopedics as to an injury which falls within his field, is generally entitled to greater weight than that of a general practitioner.’ Harris v. Great American Indemnity Co., La.App. (3rd Cir.), 142 So.2d 594, 597. But these rules do not demand a finding one way or another; they only establish strong presumptions for the trier of fact to consider when making his conclusions. The trier of fact must make the finding as to the extent of disability after all the evidence has been introduced. See 32 C.J.S. Evidence § 572.”
The defendant cites several cases where awards in similar accidents have been made in the amount of $1000.00 and $1500.00 up to $2000.00. However, in this case the Trial Judge after listening to the testimony saw fit to award her the sum of $4500.00. We do not see where the Lower Court has abused its discretion in fixing this amount and believe that it is adequate under the circumstances.
' This brings us to the question of special damages and medical expenses. Most of these items the defendant stated he would make no objection to them and in several of them he admitted that they were presented to the plaintiff but he would not acknowledge that they were correct. He did acknowledge though that the $98.00 for the damages to the car was correct.
All .of the items of expense were proven by testimony and the drug bills were supported by actual receipts placed in the record. Defendant claimed that some of the items on the bills were not for the particular injury but for other illnesses of Mrs. Ourso. However, Mrs. Ourso and her doctor both testified that they were related to the accident and there was no rebuttal testimony as to the correctness of any items on these special damages.
For these reasons the judgment of the Lower Court is affirmed.
Affirmed.