MILLER, Judge pro tem.
This suit, and the three companion cases consolidated for trial arise out of a collision which occurred on February 17, 1960, on Louisiana Highway 19, in East Baton Rouge Parish, Louisiana. The two vehicles involved were an Opel station wagon owned and operated by defendant, Henry L. Thur *399 man, Jr., and a Chevrolet panel truck owned by plaintiff, Arrow Food Distributors, Inc., operated by Ayliss E. Lee, Sr., and insured by Employers Liability Assurance Corporation, Ltd.
In the collision, Henry L. Thurman, Jr., defendant in the instant suit, Ayliss E. Lee, Sr., driver of plaintiff’s truck, Irvin F. Jones, Sr., guest passenger in Thurman’s station wagon, and John Dewitt Lee, guest passenger in plaintiff’s truck were all seriously injured, and both vehicles were severely damaged. Irvin F. Jones, Jr., died some three hours after the collision. Four suits were filed and all were consolidated for trial. We will briefly set forth the parties, demands, and decisions in these four cases and render separate decrees in each case.
In appeal No. 5625, the instant case, Arrow Food Distributors, Inc., sued Henry L. Thurman, Jr., and State Farm Mutual Automobile Insurance Company seeking the principal sum of $1,050.00 for property damages, wrecker charges, and loss of use of the truck. The trial court rendered judgment in favor of plaintiff and against defendant Henry L. Thurman, Jr., in the sum of $720.00, and dismissed the demand against State Farm Mtttual Automobile Insurance Company. Defendant, Henry L. Thurman, Jr., perfected an appeal from this judgment. Plaintiff neither appealed nor filed answer to said appeal.
In appeal, Jones v. Lee, La.App., 144 So. 2d 405, Mrs. Nagatha K. Jones, individually and as Natural Tutrix for Irvin F. Jones, Jr., sued Ayliss E. Lee, State Farm Mutual Insurance Company, Arrow Food Distributors, Inc., d/b/a Zero Frosted Foods Company, and Employers Liability Assurance Corporation, Ltd. for $200,000.-00 in her behalf and for $120,300.00 on behalf of her minor son, Irvin F. Jones, Jr. The trial court rendered judgment in favor of Mrs. Nagatha K. Jones, in her individual capacity and against Ayliss E. Lee, Sr., and Employers Liability Assurance Corporation, Ltd., in- solido, in the full sum of $26,438.59, and judgment in favor of Mrs. Nagatha K. Jones in her capacity as Natural Tutrix for her minor child, Irvin F. Jones, Jr., and against Ayliss E. Lee, Sr., and Employers Liability Assurance Corporation, Ltd. in solido, in the full sum of $10,000.00. Plaintiff’s demands against State Farm Mutual Insurance Company and Arrow Food Distributors Inc., d/b/a Zero Frosted Foods were dismissed, with prejudice. Defendants appealed and plaintiff answered the appeal asking that the award of $26,438.59 be raised to $75,000.00 and the award of $10,000.00 be raised to $50,-000.00.
In appeal, Lee Insurance Co. v. State Farm Mutual Automobile, La.App., 144 So. 2d 408, Ayliss E. Lee, Sr., on behalf of his minor son, John Dewitt Lee, sued State Farm Mutual Automobile Insurance Company, the alleged insurer of Henry L. Thurman, Jr.’s station wagon, Henry L. Thurman, Jr., Arrow Food Distributors Inc., d/b/a Zero Frosted Foods Company, and Employers Liability Assurance Corporation, Ltd., seeking to recover $500,000.00 for pain and suffering, both physical and mental, past and future, permanent disabilities and disfigurement, and loss of future earning capacity. The trial court rendered judgment in favor of Ayliss E. Lee, Sr., on behalf of his minor son, John Dewitt Lee, and against Henry L. Thurman, Jr., and Employers Liability Assurance Corporation, Ltd., in solido, for $10,000.00. The demands against Arrow Food Distributors Inc., d/b/a Zero Frosted Foods Company and State Farm Mutual Automobile Insurance Company were dismissed. Henry L. Thurman, Jr., and Employers Liability Assurance Corporation, Ltd., perfected appeals from this judgment and plaintiff in said suit answered the appeal asking that the award be increased to $25,000.00. Ayliss E. Lee, Sr. also appealed from the judgment dismissing his suit against State Farm Mutual Automobile Insurance Company but failed to timely perfect it, and such appeal was dismissed by us on February 5, 1962.
*400 In appeal No. 5628, Henry L. Thurman, Jr., sued Arrow Food Distributors, Inc., Ayliss E. Lee, Sr., and Employers Liability Assurance Corporation, Ltd. seeking to recover $53,563.10 for physical injuries, pain and suffering, medical expenses, and property damage. The trial court dismissed this suit and Henry L. Thurman, Jr., perfected this appeal.
None of the parties appealed from the trial court’s judgments dismissing the suits against State Farm Mutual Automobile Insurance Company, except Ayliss E. Lee, Sr., and he did not perfect that appeal. By virtue of the order granted by us, dismissing such appeal, State Farm Mutual Automobile Insurance Company is no longer before this court.
The learned Trial Judge was unable to assign written reasons for the foregoing judgments because his assignment as Judge pro tem with the Court of Appeal, Fourth Circuit, became effective the day after this trial. It is obvious from these judgments, however, that he concluded the accident was caused by the concurrent negligence of Henry L. Thurman, Jr., and Ayliss E. Lee, Sr.
The undisputed facts show that the accident occurred about 9:30 p. m. on February 17, 1960, immediately west of Washington’s Bar and Grocery, in Scotlandville, some %oths of a mile north of the City limits of Baton Rouge. It had been raining very heavily, but this rain had subsided to a drizzle at the time this accident occurred. At the site of the accident, Louisiana Highway 19 runs in a general north and south direction. Defendant Thurman was driving his 1960 Opel station wagon in a general southerly direction towards Baton Rouge, whereas Lee was driving plaintiff’s 1956 Chevrolet panel truck in a general northerly direction towards Baker, Louisiana. The location of three other vehicles, a red 1955 Oldsmobile operated by Norman Willis and traveling in a southerly direction immediately in front of the Thurman vehicle, a 1953 Buick parked unattended on the west shoulder of the highway, and an unidentified vehicle traveling northerly, immediately to the front of Lee’s vehicle are of considerable importance to the determination of this case. Immediately before the collision took place, the unidentified vehicle preceding Lee’s truck and driving in a northerly direction turned right, off the highway, either into a street immediately south of, or into the entrance to Washington’s Bar, and the 1955 Oldsmobile driven in a southerly direction by Willis suddenly pulled off to the right shoulder of the highway and rammed into the rear end of the parked 1953 Buick automobile. The collision between the plaintiff’s and the defendant’s vehicles involved the left front of plaintiff’s truck and the right front side of defendant’s station wagon. After the collision, defendant’s station wagon came to rest on the west shoulder of the highway and plaintiff’s truck came to rest on the east shoulder of the highway. The point of impact is disputed, however, it would appear that the two vehicles met near the center line of the highway or possibly slightly in the northbound (plaintiff’s) traffic lane.
No one witness saw the entire maneuverings and positions of the vehicles prior to and including the impact. In order to arrive at the real cause of this accident we must piece together the testimony of the eye witnesses and thereby build a composite picture of the events leading to and ending with the collision.
Norman Willis testified that just prior to the accident, he was driving in a southerly direction in his proper lane, at a speed of 30 to 35 miles per hour, and when he arrived in front of Washington’s Bar, he was forced off the highway by an oncoming vehicle in his lane of traffic. He stated that the car that ran him off the road either had four head lights or else there were two automobiles, side by side approaching him from the opposite direction. He did not see the collision between the plaintiff’s truck and the defendant’s station wagon and does not recall running into the 1953 Buick.
*401 At the time the accident happened, Felix Davis, Jr. and Burnell Williams were both standing on the west shoulder of the highway preparatory to crossing said highway. Davis testified that he first realized there was going to be an accident when he saw defendant’s Opel station wagon trying to stop in order to keep from running into the Oldsmobile which was slowing down. The Opel appeared to be under full braking power and sliding down the road in a zigzag manner. The Opel traveled in this fashion for approximately 30 feet, at which point it collided with the panel truck being driven by Lee. Since his attention was riveted on the Opel, he never did see the panel truck until the instant of impact. In his opinion, the left half front of the Opel station wagon was across the center line of the highway at the point of impact, and the collision took place either at the center line or slightly in the northbound lane of traffic. He did not see the Oldsmobile ram the rear of the parked 1953 Buick. Williams testified that just before reaching the west shoulder of the highway, Davis pulled him back and told him there was going to be a wreck. He did not see either Thurman’s Opel or plaintiff’s panel truck before the actual collision, nor did he see the collision itself. He did, however, see the Oldsmobile hit the parked Buick.
Thurman testified that the accident happened in the vicinity of Washington’s Grocery near Oriole Street in Scotlandville. He remembers that prior to the accident there was an automobile preceding him, and when he was approximately 60 to 65 feet behind such automobile, it made an abrupt right turn off the highway. Thurman does not remember seeing the car that hit him nor does he remember the accident itself, although he does remember seeing a glow of lights ahead of him just prior to the accident. He last remembers glass breaking and his car being moved. He does not recall applying the car brakes but believes that he remained within his right hand lane of the highway. He received serious head injuries which the medical evidence shows is compatible to his loss of memory.
At the trial Lee stated that he was driving the panel truck in a northerly direction at the speed of 20 to 30 miles per hour, just prior to the accident. That it was drizzling rain at the time and the road surface was wet. He did not have the windshield wipers on at the time of the accident because they would cause the windshield to smear instead of clearing his field of vision. Although he had sight in only one eye, and this eye was weak, he was not wearing his glasses on that occasion. Just prior to the accident, Lee approached behind an old model car which he proceeded to pass, but as he pulled in the opposite lane, he noticed an oncoming vehicle with bright lights, approximately a city block ahead of him. After seeing this approaching car, he decided against completing the passing maneuver and began maneuvering his car back into his right hand lane of traffic. He remembers that he and the approaching car met and passed each other and immediately after their meeting and passing, his truck collided with the Opel station wagon. He did not see the car he collided with until after he and the first oncoming car passed each other. He does not know for certain whether or not he had fully regained the right hand lane of traffic at the time the accident happened.
John Dewitt Lee, a passenger in the panel truck, did not remember his father pulling out to pass the right turning, unidentified car and did not see either of the oncoming vehicles, prior to the accident.
State Trooper, Jack W. Deweese, investigated the accident. Although he placed the point of impact slightly in the northbound lane of traffic, he readily admitted that it was not possible to measure the exact point since it was raining and there was mud and debris all over the road. Most of the debris was located in the northbound lane fairly close to the center line, as far as he could determine. He was told by Willis that an oncoming car had run *402 him off the road and listed it as an unidentified car on his report.
Before proceeding to a determination of our factual findings in these suits we will take up the contention of able counsel for Arrow Food Distributors, Inc., plaintiff in the instant case, and its insurer, Employers Liability Assurance Corporation, Ltd., that the trial court' erred in refusing to permit the introduction of a discovery deposition and alleged previous statements, given by Ayliss E. Lee, Sr., ostensibly for the purpose of allowing Employers Liability Assurance Corporation, Ltd. to contest coverage because of a violation of the cooperation and/or collusion clause of the insurance policy. In the three suits in which Employers is made a party defendant, counsel reserved its right to a defense on the possible grounds of violation of policy provision.
Succinctly stated, his position is that under the omnibus provision of the policy, Employers owed Lee a defense in the two suits filed against him. That upon assuming Lee’s defense, Lee became counsel’s client and witness, from which they cannot be relieved until Lee has made misrepresentations that are material and prejudicial to Employers cause, and this cannot be determined until after judgment, since a favorable judgment would preclude prejudice. Consequently, counsel urges that these statements and the deposition should have been admitted in evidence to determine whether the cooperation clause had in fact been violated, although the violation of this clause has never been made a specific defense in these suits.
We find no merit in this argument. Lee repudiated his statements made to Employers adjuster well in advance of the trial thereby giving Employers ample opportunity to make its defense if any it had. Furthermore, Lee stated that the statement does not correctly reflect what he told the adjuster, that he could not read the statement because his glasses were broken in the accident, and the statement was not read back to him. The adjuster was not called to refute those charges, so at best, the statement is itself unproved. The decision, concerning the if and when Employers had a defense based on the violation of the cooperation clause was theirs to make, and its refusal to make such defense presents nothing for our review. Consequently we cannot examine the prior statements for this purpose.
Able counsel for Arrow Food Distributors, Inc., and Employers Liability Assurance Corporation, Ltd. next urges that the trial court committed error in refusing to allow the introduction of the deposition in evidence by virtue of the provision of LSA-Code of Civil Procedure, Article 1428(2). The statement and deposition were offered in evidence at the trial of this cause but were denied admittance principally on the grounds that Lee was called as a witness by plaintiff, no showing was made that the testimony given by Lee at the trial of this cause came as a surprise to plaintiff, and no foundation was laid by counsel for the purpose of impeaching Lee’s testimony. Said documents are made a part of the record under a proffer of evidence as provided for by LSA-Code of Civil Procedure, Article 1636.[1]
Article 1428(2) of the LSA-Code of Civil Procedure relied upon by plaintiff’s Counsel as authority for his present position, provides:
“The deposition of a party, or of his representative as defined in Article 1634, may be used by an adverse party for any purpose.”
From this provision, counsel reasons that since in No. 5627, Ayliss E. Lee, Sr., as administrator for his minor son, John Dewitt Lee, is suing Arrow Food Distributors, Inc., and its insurer, he is a representative of an adverse party to this suit and *403 consequently Lee’s deposition is admissible for use by plaintiff in all cases herein. Furthermore, since the statement was made a part of the deposition, it should also be allowed to be introduced along with the deposition.
We agree with the Trial Judge that the statement and deposition should not have been admitted in evidence. Although Lee is the representative of an adverse party to plaintiff in No. 5627, he is not the representative of an adverse party in the instant case and in Nos. 5626 and 5628, in all of which cases plaintiff is involved. This offer was not limited for use only in 5627 but was offered in all suits here involved, and is thus inadmissible.
This court, as did the trial court, does understand that Lee’s son, herein represented by Lee, had a financial interest in convicting Lee of negligence, but this only addresses itself to the weight to be accorded Lee’s testimony. We say this because the distinguished trial judge allowed able counsel for plaintiff considerable latitude to discredit that portion of Lee’s testimony damaging to its interest.
In analyzing the total testimony given at the trial of this suit we are impressed by the existence of a potentially explosive situation just prior to the occurrence of the accident, which needed only a trigger to set off the chain reaction which resulted in this tragic accident. We are convinced that this trigger is whatever forced Willis to abruptly drive off the paved highway onto the shoulder of the road and collide with the parked Buick. This action by Willis is the strongest evidence that something unusual and unexpected happened to bring about this evasive maneuver on his part. In the absence of positive evidence to the contrary, we certainly cannot presume that Willis deliberately attempted to throw himself into such a perilous situation. Willis has always maintained that the unexpected peril that caused him to make a sudden attempt to stop and drive off the highway was the sudden appearance of an oncoming vehicle in his lane of traffic. No one denies that this happened and we find such fact to be adequately proved. Lee states that he was the one who suddenly appeared in Willis’ lane of traffic and by the process of elimination, we are forced to believe him. From all the testimony we conclude that there were only two vehicles proceeding northerly at the time and place of the accident, and the first such vehicle turned right prior to the accident, leaving only Lee’s truck as the offending vehicle. We, therefore, conclude that Lee’s appearance in the wrong traffic lane in the face of oncoming traffic is a violation of the provisions of LSA-R.S. 32:233(C) which states:
“The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety. Whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.”
The evasive action taken by Willis to avoid the sudden peril caused by Lee’s unwarranted appearance in his lane of traffic in turn caused Thurman to also undertake evasive action in order to avoid the peril caused by Willis’ fast stopping automobile. According to the witness Davis, this action consisted of the application of the brakes which caused Thurman’s vehicle to swerve in zig-zag fashion down the road. Since the reaction by Willis and Thurman both resulted from Lee’s unwarranted act of crossing into the wrong traffic lane, Lee’s negligence is a proximate cause of the resulting collision.
Having decided that the driver of plaintiff’s truck was guilty of negligence which caused or at least contributed to the accident, we must next consider the *404 possibility of acts of negligence committed by Thurman, which may have contributed to the accident. Prior to the time that Lee appeared in the wrong traffic lane, the evidence does not show that the Willis or Thurman vehicles were being operated in such a manner as to suggest the possibility of an ensuing collision. Thus the sequence of events leading to the collision were initiated by Lee’s wrongful act. The evidence does prepondently show, however, that as soon as Thurman undertook evasive action in an attempt to extricate himself from the perilous situation fast developing immediately in front of him, he lost control of his station wagon. The evidence further indicates that the impact took place slightly within the northbound lane of traffic.
Counsel for plaintiff argues that Thurman’s negligence is enunciated in the rule that where an automobile collision occurs in one of two traffic lanes, the presumption is that the driver of the vehicle determined to be in the wrong lane was negligent, and the burden is upon such driver to show the collision was not caused by his negligence. In support of this rule, counsel cites Noland v. Liberty Mutual Insurance Company, 232 La. 569, 94 So.2d 671; Territo v. Carter, La.App., 138 So.2d 218; Hightower v. Dr. Pepper Bottling Co. of Shreveport, La.App., 117 So.2d 642; and Carhee v. Scott, La.App., 104 So.2d 236.
Assuming that the accident did occur in the northbound or Lee’s lane of traffic, we are unable to agree with plaintiff’s contention that such fact convicts Thurman of negligence. The only case cited by plaintiff, which bears any analogy to the instant case is Noland v. Liberty Mutual Insurance Company, 232 La. 569, 94 So.2d 671. In that case Goudeau, the driver of defendant’s truck, swerved or skidded into plaintiff’s traffic lane in order to miss hitting an automobile parked partially on the roadway at approximately a 45 degree angle and occupying approximately one-half of the paved portion of defendant’s lane of traffic. In said cited case defendant explained his vehicle being in the wrong traffic lane on the doctrine that he acted in a sudden emergency not of his own making and in attempting to avoid a perilous situation. Consequently, defendant’s conduct did not give rise to an action in damages in favor of plaintiff. The accident happened at night and the parked vehicle had no lights, flares, or warning signals. In holding for plaintiff, the Supreme Court said:
“Under these circumstances we can only conclude that Goudeau’s failure to timely observe the parked vehicle was due to his not keeping a proper lookout as to the condition of the road ahead. His seeing such vehicle at the last minute and swerving into plaintiff’s lane to prevent striking it (or being forced there by skidding when he attempted to stop) was not an emergency created by another as referred to in the cases relied on by defendants. Rather, the emergency here resulted from Goudeau’s lack of vigilance.”
This holding is not apposite to this case. Goudeau, the driver of defendant’s vehicle in the cited case, helped create the emergency by his lack of attention. In the instant case, defendant Thurman had nothing whatsoever to do with Lee’s sudden appearance in the wrong traffic lane or Willis’ abrupt turn off the highway, and there is no showing that he could have seen this sudden emergency in time to avoid it.
We find that the present case is controlled by the rule set forth in Embody v. LeBlanc, La.App., 131 So.2d 225. In that case we found that plaintiff passed two trucks during a drizzling rain. When he drew abreast of the front truck, he was then some 400 feet from an oncoming car driven by Mrs. LeBlanc. On seeing plaintiff’s car in her lane, Mrs. LeBlanc applied the brakes, skidded into the center guard rail of a bridge she had just entered, lost control of her car and skilled into plaintiff’s traffic lane where the collision took place. In holding plaintiff’s negligence as being *405 the sole cause of the accident, this court observed:
“As to any negligence on the part of Mrs. LeBlanc, we feel that the Lower Court was perfectly correct in holding that she was faced with a sudden emergency not of her own making, and took the usual and normal steps to avoid the accident, i. e., applying her brakes. She is, therefore not responsible for the fact that her car skidded into the guard railing and was then deflected into the north or wrong lane of traffic, where the impact apparently occurred.”
We have considered also the possibility that defendant Thurman may have been operating his station wagon at an excessive rate of speed just prior to the collision. As previously stated the accident happened in Scotlandville, but there is no evidence showing that Scotlandville is an incorporated community, nor was any ordinance introduced in evidence setting a speed limit for the area where the accident happened. Davis did testify that Thurman was going faster than Willis, but he also testified that Willis was stopping. The state trooper did not testify as to what he would consider to be a safe speed under the prevailing conditions. In short we have no evidence showing Thurman’s speed to have been excessive. The evidence indicates to us that Thurman was driving his vehicle at such a speed and with sufficient control that he would have been able to avoid any foreseeable dangers. We do not believe that Thurman should have anticipated the emergency presented here because he had every right to expect that Lee would obey the traffic law and not drive in the wrong traffic lane when it was unsafe so to do. We conclude therefore that Lee’s negligence was the sole proximate cause of this accident and the trial court erred in its holding that Thurman was jointly responsible.
For these reasons, the judgment of the District Court is reversed and plaintiff’s suit is dismissed at his costs.
Reversed and dismissed.

. See opinion on denial of rehearing in Lee v. State Farm Mutual Automobile Ins. Co., 144 So.2d 411.