189 So.2d 29 (1966)
Emmer Lee SCOTT
v.
HARDWARE DEALERS MUTUAL INSURANCE CO. et al.
No. 6667.
Court of Appeal of Louisiana, First Circuit.
June 13, 1966.
Rehearing Denied July 8, 1966.
Writ Refused October 5, 1966.
*31 Joel B. Dickinson, Baton Rouge, for appellant.
Daniel R. Atkinson, of Dale, Richardson & Dale, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.[*]
LANDRY, Judge.
An intersectional collision between a 1947 Chevrolet pickup truck owned and operated by Hardy Scott, in which his sister, Emmer Lee Scott, was a guest passenger, and a 1959 Mercury operated by Charles W. Davis, the insured of defendant, Hardware Dealers Mutual Insurance Company, (sometimes hereinafter referred to as "Hardware"), resulted in suits being filed by the Scotts against Hardware for personal injuries and property damage. After trial on the merits the lower court rejected the claims of both plaintiffs and from said adverse ruling only the guest passenger, Emmer Lee Scott, has appealed.
The accident occurred at approximately 7:45 P.M., January 24, 1966, as Scott, proceeding westerly along State Highway 3006, also known as "Lavey Lane", a paved two way highway running east and west, in the Parish of East Baton Rouge, attempted to turn left onto Woodard Drive, a graveled thoroughfare running in a northerly-southerly direction and which joins Lavey Lane from the south forming a "T intersection" therewith. Scott's vehicle was struck on its left side by the right front portion of the Davis vehicle as the latter was in the act of overtaking and passing. The point of collision was established as being in the center of the left or eastbound lane of Lavey Lane.
Our colleague below found the sole proximate cause of the collision to be Scott's negligence in attempting a left turn when Davis's overtaking vehicle was so close as to make such maneuver patently dangerous. Appellant maintains the trial court erred in so finding and in exonerating Davis from negligence proximately causing the accident. More particularly counsel for appellant urges the lower court was mistaken in declining to hold Davis guilty of negligence in passing at an intersection and operating his automobile at an excessive rate of speed under the circumstances. In this regard appellant contends Davis negligently attempted to pass the pickup truck while it was stopped at the intersection signaling a left turn and also that Davis was traveling too fast because the highway was wet from a misting rain.
The pivotal issue in the instant case is whether the junction formed by the confluence of Lavey Lane and Woodard Drive constitutes an intersection within the meaning of the term as employed in LSA-R.S. 32:76 which prohibited a motorist from driving on the left side of the highway when approaching within one hundred feet or traversing an intersection.
The "intersection" in question is situated in open country. It appears Woodard Drive is a dead-end gravel road, the right of way of which is approximately thirty feet in width. It is approximately two-tenths of a mile in length running southerly from Lavey Lane with which it forms what is commonly referred to as a "T" intersection. It is shown that along its length are situated nine residences and one commercial establishment known locally as a "club". The only entrance and exit to Woodard Drive is Lavey Lane which latter thoroughfare is a paved state highway having an improved traveling surface approximately twenty-four feet in width and which lies south of the Town of Baker and serves as a connecting line between State Highway 67 (known as Plank Road) on the east and State Highway 19 (known as the Baton Rouge-Baker-Zachary Highway) on the west. The lawful speed limit on Lavey *32 is shown to be 60 miles per hour while the applicable limit on Woodard Drive is not established in the record. It is conceded there is no sign within the right of way of Lavey Lane indicating Woodard Drive is an intersection and neither is there a customary yellow line on the surface of Lavey Lane serving as a warning for motorists not to pass within the vicinity of the "intersection". It is further shown that a street light is situated at the junction of the roadways concerned and that it was burning at the time of the accident. It also appears there were additional street lights at regular intervals along the right of way of Lavey Lane some of which were situated at or near other gravel streets similar in character to Woodard Drive.
In Hoover v. Wagner et al., La. App., 189 So.2d 20, decided this day, we reviewed in some detail the jurisprudence interpreting the word "intersection" as used in LSA-R.S. 32:76 and pointed out that in virtually each instance in which a junction of the nature herein involved was held to not constitute an "intersection" concerned a junction between an unmarked dirt or gravel road and a paved state highway. We also pointed out therein that the issue whether a meeting of two roads constitutes an intersection within the contemplation of the applicable statute must be determined in the light of the circumstances of each individual case.
In United States Fidelity and Guaranty Co. v. Duet, La.App., 177 So.2d 302, we held, in line with established jurisprudence, that a T-intersection between a State Highway and a narrow dead-end lane is not an intersection within the meaning of the quoted section of the Highway Regulatory Act.
A similar result was reached by our brothers of the Second Circuit in Crane v. London, La.App., 152 So.2d 631, which held that an intersecting narrow dirt road neither posted nor marked by signs or lines indicating a no-passing zone, was not an intersecting highway within the intendment and purpose of the statute prohibiting overtaking and passing of motor vehicles at intersections.
An identical conclusion was attained by the Third Circuit in Davis v. Southern Farm Bureau Casualty Ins. Co., La.App., 134 So.2d 366, wherein an unmarked narrow gravel road was held not to constitute an intersection within the meaning of the applicable statute. We hasten to add, however, that the mere fact that the converging roadways are situated in open country as distinguished from intersections situated within municipal limits, is not necessarily the sole or most important factor in determining whether cross roads constitute an intersection.
As previously noted, Woodard Drive is a well defined street the right of way for which is thirty feet in width. Although its surface is graveled and not paved there is no obstruction to block its view to a motorist approaching upon Lavey Lane from either direction. In addition a street light is situated at the corner of Woodard Drive and Lavey Lane and other street lights are located at intervals along Lavey Lane giving some indication that the location is residential in character. Granted the intersection is in the open country, defendant Davis, who traveled the area frequently, was aware that Woodard Drive and other streets ran southerly from Lavey Lane forming "T-intersections" therewith. Under such circumstances we conclude that Woodard Drive was an intersection within the meaning of LSA-R.S. 32:76.
With regard to the occurrence of the accident appellant, her host driver and an impartial pedestrian bystander, Mary Williams, all testified in substance that Scott, traveling at a speed of about 25 miles per hour, slowly brought his vehicle to a halt at the corner of Lavey Lane and Woodard Drive after having given a hand signal of his intention to turn. Admittedly Scott's truck had no mechanical turn signal device. They stated further that Scott waited for *33 an oncoming vehicle to pass going easterly on Lavey Lane and immediately following its passage commenced his turn, still giving a hand signal. In addition, Hardy Scott testified that he saw the lights of the overtaking Davis vehicle in his outside rear view mirror and that when he began his turn Davis's vehicle was some distance to the rear.
Mary Williams also stated she was standing at the corner awaiting the arrival of her sister who was coming for her in an automobile. Although her sister knew the location of the witness's house which was only a step around the corner on Woodard and despite the fact the weather was cold and misting, Mary nevertheless went to the corner and waited there several minutes for her sister's arrival. She stated further the accident occurred within her sight as she was facing easterly which was the direction from which she expected her sister to approach. She noticed that as Scott was making his turn the Davis vehicle approached from the rear at a high rate of speed which caused her some concern as she sensed an accident was imminent and was frightened because she thought the overtaking Davis automobile was her sister's car. She could not estimate the speed of the Davis vehicle neither could she approximate its distance from the point of impact when she first observed it approaching.
Davis testified he was traveling westerly along Lavey Lane at about 45 miles per hour when he noticed and became aware he was overtaking Scott's pickup truck ahead traveling in the right or outside lane at a speed of approximately 20 miles per hour. While some distance to the rear of the truck he moved into the left lane preparatory to passing. He did not see Scott's hand signal but when his vehicle was even with the rear of the truck he noticed Scott's vehicle moving toward the left lane whereupon he applied his brakes forcefully in an effort to avoid a collision.
It is uncontroverted that Davis's vehicle left 85 feet of skid marks prior to the point of impact entirely in the left or passing lane. From the skid marks, debris, gouge marks on the pavement and other physical evidence, the investigating officers fixed the point of impact at the center of the left lane of Lavey Lane and the center of Woodard Drive. It is also well established that the right front of the Davis automobile struck the left side of the Scott pickup truck just behind the door. Davis testified there was no oncoming vehicle as averred by plaintiff and her witnesses as hereinabove indicated. According to Davis, the only car approaching from the opposite direction passed him a considerable distance east of the scene of the accident.
Concerning Scott's negligence there can be little doubt. Regarding the duty of a left turning motorist, we quote with approval the rule stated in Ruple v. Travelers Indemnity Company, La.App., 129 So.2d 240, to-wit:
"It is the well-settled law and jurisprudence of our state that a person who attempts to make a left turn or who attempts to turn from a direct line on the public highways of the state must ascertain before turning that the turn can be made safely without endangering normal overtaking or on-coming traffic. E. g. Blanchard v. Ashby Construction Co., La.App. 1st Cir., 1957, 95 So.2d 670; Methvin v. Roshto, La.App. 1st Cir., 1957, 96 So.2d 383. The onerous burden placed upon a left turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal, which fact is disputed in the instant case, is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety.

* * * * * *
Pertinent under these circumstances is the observation made by the court in Service Fire Insurance Company [of New York] v. Suezy, La.App. 1st Cir., 1954, 77 So.2d 110:
`By his own admission the defendant did not exercise such caution, as, although *34 he knew that the Hartner car was following him, he did not look immediately prior to turning to determine that the way was clear. Regardless of whether or not he had given a hand signal, he knew that there was traffic behind him and yet failed to exercise the caution that the law imposes upon him. By just giving the hand signal Suezy only performed one-half of his duty. He should also have looked to see if the way was clear. If he had looked, he would have seen he could not make the turn safely. This is similar to a motorist who comes to an intersection and stops but fails to look for approaching traffic. He only performs one-half of his duty under the law. This was definitely an act of gross negligence on the part of the defendant and was a proximate cause of the accident, if not the proximate cause of the accident.'"
In effect Scott testified that after waiting for the eastbound motorist to pass, he then shifted the gears of his truck and slowly proceeded into his turn. In this regard he was corroborated by the witness Mary Williams who testified and emphasized that Scott started across very slowly after the eastbound car passed. If Scott did in fact proceed as indicated, he failed to perform the entire duty incumbent upon him. Being cognizant of the Davis vehicle approaching from the rear, he was charged with the obligation of looking immediately before turning to make certain he could execute his intended maneuver in safety. The mere giving of a hand signal is not sufficient, the left turning driver is charged with a high degree of care which he must exercise to escape the charge of negligence. Service Fire Insurance Company of New York v. Suezy, La.App., 77 So.2d 110.
As did our brother below, we do not believe the eastbound vehicle passed Scott in point of time as close to the occurrence of the accident as is indicated by the testimony of plaintiff and her witnesses. Had this been the case a headon collision between defendent Davis and the eastbound motorist would most certainly have occurred in the eastbound lane.
We believe, however, our esteemed brother below erred in failing to find Davis negligent in passing at an intersection. As hereinabove shown, the junction in question was an intersection and it is clear beyond doubt that Davis was attempting to pass within 100 feet thereof. In so doing he was negligent per se. Furthermore, we are of the opinion he was also negligent in failing to observe Scott's extended arm signaling the latter's intent to turn. Davis readily admits he was aware of the presence of the truck ahead and since his headlights were properly functioning there appears no reason why he should not have seen Scott's signal if he were maintaining a proper lookout. Davis' passing in the intersection resulted in the type of accident the statute is designed to prevent. This dereliction, coupled with his failure to timely note Scott's signal, renders him guilty of negligence proximately causing the accident. It follows, the judgment of the trial court exonerating Davis from negligence must be set aside. We conclude the aforementioned negligence of Davis was a proximate cause of the accident rendering him liable for plaintiff's injuries.
There remains the question of quantum. The day following the accident plaintiff was seen by Dr. Charles Reinninger who, after examination, diagnosed her injuries as cervical strain (whiplash) and strain of the low back muscles, accompanied by some muscle spasm and limitation of motion of the neck and back. Dr. Reinninger did not hospitalize plaintiff. He treated her conservatively until February 11, 1964, on which date he referred her to Dr. Thomas Campanella, Orthopedic Surgeon, because of plaintiff's continued complaints of neck and back pain.
*35 Dr. Campanella gave plaintiff a thorough examination, including X-ray, and based thereon found her to be suffering from strain of the cervical muscles, particularly on the right side and mild lumbosacral sprain attended by strain of the muscles of the small part of the back. He found spasm of the right trapezius muscle as well as in the muscles of the low back. Plaintiff exhibited some pain upon stretching or extending the muscles of her back. X-rays proved negative as to bone or nerve root involvement. Dr. Campanella prescribed diathermy and muscle relaxants, which he described as conservative treatment. Plaintiff returned to Dr. Campanella May 12, 1964, on which date she reported her neck condition somewhat improved although she still experienced occasional discomfort therefrom. Examination on this date proved essentially negative and Dr. Campanella attributed plaintiff's reported occasional discomfort to arthritis. On June 23, 1964, plaintiff again consulted Dr. Campanella who found tenderness in the low back accompanied by some muscle spasm. At this time plaintiff had no complaint whatsoever regarding her neck. Dr. Campanella estimated plaintiff would suffer with her back an additional three to six weeks. Plaintiff received no medical treatment following her last visit to Dr. Campanella on June 23, 1964.
In view of the nature, duration and extent of the injuries received by plaintiff, Emmer Lee Scott, we are of the opinion an award of $2,000.00 will adequately compensate her for her injuries. It is well settled that no hard and fast rule can be laid down with respect to assessment of awards for personal injuries. Each case must be determined in the light of its own peculiar facts and circumstances. Awards in cases involving similar injuries are to be used merely as guides in determining recovery of a particular litigant. Plaintiff also incurred medical expense in the sum of $180.00 ($100.00 to Dr. Reinninger and $80.00 to Dr. Campanella) which amount she is likewise entitled to recover.
For the reasons hereinabove set forth, it is ordered, adjudged and decreed that the judgment of the trial court rejecting and dismissing the demands of plaintiff, Emmer Lee Scott, be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of plaintiff, Emmer Lee Scott, and against defendants, Charles W. Davis and Hardware Dealers Mutual Insurance Co., in solido, in the full sum of $2,180.00, together with legal interest thereon at the rate of five (5%) per cent per annum from date of judicial demand, until paid, costs of these proceedings to be paid by defendant, Hardware Dealers Mutual Insurance Co.
Reversed and rendered.
NOTES
[*] Due to the death of ELLIS, J., after argument but before rendition, this opinion is handed down unanimously by LOTTINGER, LANDRY, REID and BAILES, JJ.