200 So.2d 78 (1967)
Houston COTTON, Individually and for the Use and Benefit of his minor Son, Houston Roy Cotton
v.
ASSOCIATED INDEMNITY CORPORATION OF SAN FRANCISCO and Polk Chevrolet, Inc.
No. 7040.
Court of Appeal of Louisiana, First Circuit.
May 29, 1967.
Rehearing Denied June 30, 1967.
*79 A. R. Christovich, Jr., of Christovich & Kearney, New Orleans, for appellant.
John G. Discon and Reginald T. Badeaux, Jr., of Badeaux & Discon, New Orleans, C. T. Williams, Jr., of Loeb & Livaudais, New Orleans, for appellee.
Before LOTTINGER, REID and SARTAIN, JJ.
REID, Judge.
This is a suit for damages brought by Houston Cotton, individually and for the use and benefit of his minor son, Houston Roy Cotton, for damages sustained in an automobile accident which occurred on or about May 29, 1964. Suit was filed against Associated Indemnity Corporation of San Francisco as the personal automobile liability insurer of Roxie Duncan, driver of the vehicle in which Houston Roy Cotton was a passenger, and against Polk Chevrolet, Inc., the owner of the automobile which Roxie Duncan was driving.
Plaintiff claims that at about 8:45 P.M. on May 29, 1964, his minor son, Houston Roy Cotton, was riding as a guest passenger in a 1964 Chevrolet owned by Polk Chevrolet, Inc. of Baton Rouge, Louisiana, being driven at the time by Roxie Duncan. He further alleges that while enroute from Baton Rouge to Bogalusa, Louisiana, on Louisiana Highway 21, in the Parish of St. Tammany, upon reaching a sharp curve known as "Dead Man's Curve", located 2.2 miles north of the City limits of Covington, Louisiana, the Chevrolet suddenly and without warning veered off the highway to its right, striking a culvert, several mail boxes and an electric pole, going out of control and causing plaintiff's son to be thrown from the car onto the ground, thereby sustaining severe and permanent injuries.
*80 Plaintiff further claims that said Roxie Duncan had entered into an agreement with Polk Chevrolet, Inc. to trade a 1959 Chevrolet truck to Polk Chevrolet for a 1963 Chevrolet dump truck; that upon delivering the trade-in vehicle to Polk Chevrolet, Duncan was informed that the dump truck was being repaired and he was given a 1964 Chevrolet to be used until the dump truck was ready for delivery; that said Roxie Duncan was under the influence of alcohol at the time of his arrival at Polk Chevrolet, Inc. and that he consumed several beers with a Polk Chevrolet employee prior to the time the 1964 Chevrolet was turned over to him to be used while awaiting the dump truck delivery; that the loan of said car was made by the salesman within the course and scope of his employment, for the use and benefit of and for the express purpose of and in furtherance of the business of Polk Chevrolet, Inc.; and that the accident complained of was caused by the joint and concurrent negligence of Polk Chevrolet, Inc. and Roxie Duncan.
Polk Chevrolet, Inc. filed a general denial and further alleged that Duncan had no permission to drive said vehicle beyond Denham Springs, Louisiana, a town approximately 13 miles from Baton Rouge, and that the use of the vehicle by Duncan was personal and not as an agent of Polk Chevrolet, Inc., and that no acts of said Duncan are imputable to Polk Chevrolet.
Plaintiff amended his petition to make Great American Insurance Company of New York, N. Y., public liability insurer of Polk Chevrolet, Inc., a party defendant, to which Polk Chevrolet, Inc. answered denying the same and further alleging contributory negligence on the part of plaintiff.
Associated Indemnity Corporation of San Francisco filed an answer of general denial and specifically denied coverage under the terms of its policy for the reason that there was other valid and collectible automobile liability insurance available to Duncan, and further alleged contributory negligence on the part of the plaintiff.
After trial of this matter and submission of briefs, the Trial Court rendered judgment in favor of plaintiff, Houston Cotton, and against Associated Indemnity Corporation of San Francisco in the sum of $58.97, plus interest, and against Great American Insurance Company of New York, New York, in the sum of $3,478.95, plus interest. Judgment was rendered also in favor of Houston Cotton, for the use and benefit of his minor son, Houston Roy Cotton, against Associated Indemnity Corporation of San Francisco, in the sum of $208.33, plus interest, and against Great American Insurance Company of New York, New York, in the sum of $12,291.67, plus interest. Plaintiff's suit as against Polk Chevrolet, Inc. was dismissed. Great American Insurance Company of New York has appealed from said judgment.
The first question to be decided in this case is that of both Great American and Associated Indemnity attempting to deny liability based upon certain clauses appearing in the insurance contracts. Great American attempts to deny liability on the basis of a so-called "escape clause" which provides as follows:
"* * * but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person; * * *."
Associated Indemnity likewise attempts to avoid liability based on a so-called "excess" insurance clause which provides as follows:
"If there is other automobile medical payments insurance against a loss covered by Part II of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible automobile medical payments insurance;

*81 provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance."
The problem is to determine which, if either, of these clauses is to be considered and given effect. The plaintiff cites the cases of Lincombe v. State Farm Mutual Automobile Insurance Company, 166 So.2d 920 (La.App.3rd Cir. 1964) and State Farm Mutual Insurance Co. v. Travelers Insurance Company, 184 So.2d 750 (La.App.3rd Cir. 1966). These are also relied upon by the defendant-appellant, Associated Indemnity.
In the Lincombe case an automobile dealership loaned a car to a customer who had ordered a new car but which had not yet been delivered and this customer wrecked the car. At the time of the accident, this customer, a Mrs. Grigsby, had in effect a policy of insurance issued by State Farm insuring her against claims for damages arising out of "the owned automobile or any non-owned automobile" being the car which Mrs. Grigsby was trading in on the new car. State Farm contended that any insurance which might have been afforded under her policy was only "excess insurance" above that afforded by other valid and collectible insurance and that State Farm was not liable because the automobile dealership was covered by Travelers Insurance Company. Under the provisions of the Travelers policy, Travelers insured against claims for personal injury and property damage of any person while using an owned automobile with the permission of the named insured. Travelers, however, contended that its policy provided coverage for the driver of the owned automobile, "only if no other valid and collectible automobile liability insurance, either primary or excess, * * * is available to such person." From this it is obvious that the factual situations involved in the Lincombe case and the case at bar are remarkably similar.
As to the question of coverage, the Third Circuit Court of Appeal held that the respective provisions of the two policies were "mutually repugnant" and thereby ineffective. In so holding the Court stated:
"Each of these insurers, relying on the above quoted provisions of the policies, denies liability on the ground that the insurance provided by the other is available to Mrs. Grigsby. State Farm contends that it provides only excess coverage over and above that afforded by the Travelers policy and Travelers contends that it provides no coverage because the insurance afforded by the State Farm policy is available to the insured.
In our opinion there is no real difference between the quoted provisions of these policies. In each the purpose is to relieve the insurer from all or a portion of the liability which it otherwise would have if there is other valid and collectible insurance of the same type available to the insured. Actually, the insurance afforded by one of these policies is not any more `available' to the insured than is the insurance provided by the other. We think, therefore, that the `excess insurance' clause in the State Farm policy and the `other insurance' or escape clause in the Travelers policy are mutually repugnant to each other, and that insofar as the claim in this case is concerned those provisions of the policies are ineffective. * * *" Lincombe v. State Farm et al., supra, 166 So.2d p. 925.
So holding, the Third Circuit in effect found that both insurance companies were responsible to pay some portion of the debt but refused to work out a formula for just what portion each would pay and instead remanded for the Trial Court to make this determination.
The counsel for Great American contends the Third Circuit was in error and did not fully understand the significance of the wording of the various clauses involved in the respective policies of insurance. In *82 support of that position, counsel for Great American attempts to pursuade the Court by reference to testimony which was actually excluded by the Trial Judge but which is included in the Great American brief in the way of proffer. In support of its position Great American has attempted to introduce evidence at the appellate level which may or may not give support of its position. At any rate, the Court must refuse to consider the testimony which is included by way of proffer by the expert, Mr. Cozzens. We do not feel that the motives behind such clauses in insurance policies nor the basis for calculating the premium can be given sufficient weight to justify our holding contra to the well reasoned decisions of the Third Circuit in the Lincombe case and the State Farm case. As was stated above, the Lincombe case was remanded to the Trial Court to make a determination as to the proportion each company was to pay. However, in the State Farm case, Judge Savoy stated that the insurer would be liable for damages sustained in proportion to his policy limits. This is apparently what the Trial Judge in the present case was basing his judgment upon and we see no reason to overturn his ruling. Great American further contends, in the alternative, if it is primarily liable for damages that its liability has been reduced by the limited coverage of the policy which states as follows:
"(I) The applicable limit of the company's liability shall be the amount by which (1) the applicable minimum limit of liability for bodily or property damage specified in the financial responsibility law of the state in which the automobile is principally garaged exceeds (2) the sum of the applicable limits of liability under all other valid and collectible insurance available to the insured. * * *"
However, in the Lincombe case exactly the same was found. The Court of Appeal refused to give any effect to this endorsement. The Court there stated:
"We have already pointed out that because of some mutually repugnant provisions of both insurance contracts, the insurance afforded by the State Farm policy is not any more `available' to the insured than is the insurance provided by Travelers, and for that reason these conflicting or irreconcilable provisions in both policies were held to be ineffective. For the same reasons we think the above quoted provisions of the Travelers policy are ineffective here insofar as they purport to reduce the liability of Travelers to a figure less than would be applicable if no other insurance at all was available to Mrs. Grigsby. In our opinion the last quoted provisions of the Travelers policy do not have the effect of relieving that insurer from liability in this case."
A similar case on all fours with the instant case is the decision this day handed down by us in Panel B in the matter of Graves et al. v. Traders & General Insurance Co. et al., 200 So.2d 67. Our learned colleague, Judge Landry gave a complete analysis of the jurisprudence on this point of law.
As to the question of contributory negligence, we will take the liberty of quoting the Trial Judge. Judge Ellis stated:
"Although an attempt was made to find Houston Roy Cotton contributorily negligent for driving with Mr. Duncan while Mr. Duncan was under the influence of alcohol, I do not believe that this has been proven. Although it is clear from the evidence that Mr. Duncan drank a number of beers during the day, no one ever testified that he appeared to be under the influence of alcohol, or that his driving was noticeably affected thereby."
We find nothing in the record to show that the Trial Judge in any way abused his discretion. For this reason we cannot overrule his finding of fact.
This Court feels that the record clearly supports the findings of the lower *83 Court with regard to quantum. Upon Houston Cotton's arrival at a hospital in Bogalusa, Louisiana, he was treated by Dr. Richard P. Hortman, a surgeon. Dr. Hortman testified that his condition upon arrival was one of an acutely ill person who had been severely injured; that he was conscious, but irrational with a history of having been unconscious; and that he remained irrational for approximately two and a half to three weeks. He had a severe cerebral concussion, sustained several lacerations, three to the scalp and an avulsion of five to eight centimeters of skin in the right temple region, and sustained a comminuted fracture of the right middle femur. He was immobilized from May until September 22nd. Two months of that time he remained in the hospital. Dr. Hortman explained that a "comminuted fracture" is a fracture where there are more than two fragments of bone and in Cotton's case there were several fragments of breaks. A Kirschner wirea large stainless steel wire, was inserted into the upper tibia, or the upper portion of the right leg bone in order to apply a spreader bar type of traction apparatus and apply traction to the fractured or broken femur. He was then placed in a cage appliance and piecing attachment which the doctor said was a basket-shaped affair that allows the leg to rest with it flexed at the knee, and this whole apparatus was suspended from bars over the bed with ropes attached. On July 21 he was taken to the operating room and the traction and steel pin were removed and he was placed into a right hip spica, a cast from the rib cage around the entire trunk down to the knee of the opposite leg and down to the toes of the leg of the fracture with a bracing bar between the leg. The cast was not removed until September 22, and the doctor testified that his leg was thirteen grams as small as when he entered the hospital or when he had not had a broken leg. After the cast was removed, the boy was required to learn to sit again and for a time was forced to use a wheel chair and eventually graduated to crutches. He was required to undergo extensive physiotherapy for both legs. At the time of the trial, the boy testified that his leg still ached and throbbed in the hip joint when he put ordinary weight on it for more than two to three hours.
In his written reasons for judgment the Trial Judge concluded that considering the severity of Houston Roy Cotton's injuries, the discomfort which he must have undergone as a result of the traction in which he was placed, and the cast which covered him from armpit to ankle, the slight residual difficulty which he has with his leg and the scar on his right cheek, he was of the opinion that the sum of $12,500.00 would adequately compensate Houston Roy Cotton for his injuries, in addition to the award of $3,537.92 as special damages.
The trial judge proportioned this award between the two insurance companies on the basis of the amount of each policy. The maximum amount for one person in the Associated Indemnity Corp. of San Francisco was $5,000.00. The maximum amount for one person in the Great American Insurance Company of New York, New York was $300,000.00. We find that based on these policy amounts, the trial judge correctly pro-rated the awards herein between these two insurance companies.
The courts have uniformly held that the Trial Judge has much discretion in awarding damages in a personal injury suit. As this Court said in the recent case of Scott v. Hardware Dealers Mutual Insurance Company, La.App., 189 So.2d 29, it is well settled that no hard and fast rule can be laid down with respect to assessment of awards for personal injuries. Each case must be determined in the light of its own peculiar facts and circumstances. Awards in cases involving similar injuries are to be used merely as guides in determining recovery of a particular litigant. In view of the nature, duration and extent of the injuries received by the plaintiff in the present case, we are of the opinion that the award by the lower Court is neither excessive nor inadequate. We believe the award to be in line *84 with our jurisprudence. See also Lee v. State Farm Mutual Automobile Insurance Co., La.App., 144 So.2d 408 (1st Cir. 1962); Thurman v. Employers Liability Assurance Corporation, 144 So.2d 411 (La.App.1962); and Ourso v. Lumbermens Mutual Casualty Co., La.App., 189 So.2d 16 (1 Cir. 1966).
For the above and foregoing reasons we believe the judgment of the Trial Court is correct and the same is affirmed.
Affirmed.